In re Petition Of Michelle S. JACOBS F/K/A Michelle S. Junecko to transfer Structured Settlement Payment Rights.

Appeal of Michelle S. Jacobs F/K/A: Michelle S. Junecko.

Superior Court of Pennsylvania.

Argued Feb. 28, 2007.

Filed Nov. 19, 2007.

Robert L. Monks, Pittsburgh, for appellant.

BEFORE: MUSMANNO, BOWES, and JOHNSON, JJ.

OPINION BY JOHNSON, J.

¶ 1 We are asked to determine whether a trial judge has abused his discretion or committed an error of law where that judge denies without prejudice a petition to transfer structured settlement payment

rights filed pursuant to the Structured Settlement Protection Act ("SSPA" or "the Act"). *See* 40 P.S. §§ 4001–09. We find that the Act requires a court to determine, on an independent basis, that any transfer made pursuant to the Act serves the best interest of the petitioner. In the case before us, the judge has provided guidelines detailing the contents of any proposed petition. We find that those guidelines are intended to ensure that a petition contains the information necessary to support a finding that the transfer will be in the petitioner's best interests. We are unable to conclude that requiring a petitioner to adhere to those guidelines, as a preliminary step to receiving a hearing on the petition, constitutes an abuse of discretion or error of law. Accordingly, we affirm the order which denied the petition, without benefit of a hearing, where that order set forth the matters that needed to be addressed in any amended petition the petitioner may seek to file.

¶ 2 Michelle Jacobs (nee Junecko) appeals from the trial court's order denying her Petition to Transfer Structured Settlement Payment Rights without holding an evidentiary hearing. Jacobs contends that section 4004 of the SSPA requires the court to convene an evidentiary hearing and that the trial court erred as a matter of law in denying her petition. *See* 40 P.S. §§ 4004. Jacobs further asserts that the SSPA confers upon her certain property rights in her structured settlement payments and that she was deprived of these rights in violation of procedural and substantive due process. Upon review, we conclude that the plain language of section 4004 of SSPA does not require the trial court to schedule and hold a hearing before denying a petitioner's SSPA petition. We also conclude that Jacobs has not demonstrated the deprivation of a constitutionally protected property interest, and thus,

the protections of the due process clause are not implicated in this case.

¶ 3 This matter arises out of Jacobs's second attempt to sell and transfer her right to receive future structured settlement payments to a third party by filing the required petition under the SSPA and the trial court's subsequent denial of that petition without holding an evidentiary hearing.

¶ 4 On May 27, 1985, when Jacobs was nineteen years old, she was injured in an automobile accident. In June 1987, Jacobs settled her claim with the alleged tortfeasor's insurance company and entered into a Release and Structured Settlement Agreement ("the Agreement"). The insurance company assigned its obligation to make payments to AEGON Structured Settlements, Inc. (the settlement obligor), which purchased an annuity from Monumental Life Insurance Company (the annuity issuer) to fund the settlement payments. Pursuant to the Agreement, Jacobs was to receive both monthly payments and lump sum payments every five years. The monthly payments were based on an increasing scale: $1,900 per month for the period of July 1987 to June 1992; $2,150 per month for the period of July 1992 to June 1997; $2,400 per month for the period of July 1997 to June 2002; $2,650 per month for the period of July 2002 to June 2007; $2,900 per month for the period of July 2007 until Jacobs's death. Additionally, the lump sum payments were scheduled to be made as follows: $10,000 in June 1992; $20,000 in June 1997; $40,000 in June 2002; $80,000 in June 2007; $120,000 in June 2012; $150,000 in June 2017. Sometime before 2000 and the enactment of the SSPA, Jacobs (the payee) entered into a purchase agreement with a different structured settlement purchase company, Stone Street Capital (the transferee), and transferred

her rights to receive the June 1, 2007 lump sum payment of $80,000, as well as her monthly payments through March 2008. The record does not disclose what lump sum amount of money Jacobs received in return from Stone Street Capital or how she spent or invested the money.

¶ 5 On February 11, 2000, the General Assembly enacted and the Governor signed into law the SSPA. Under the SSPA, a payee must first seek court approval before transferring a structured settlement payment to a third-party transferee, by filing a petition requesting the transfer in the court of common pleas of the judicial district in which the payee is domiciled. *See* 40 P.S. §§ 4003–04. In order to effectuate a structured settlement payment transfer, the SSPA requires that a trial court enter an order granting the petition, expressly finding, *inter alia,* "that the transfer is in the best interests of the payee or his dependents." *See* 40 P.S. § 4003(a)(3). Without a final court order or decree granting the petition, "[n]o transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment to any transferee...." 40 P.S. § 4003(a).

¶ 6 On April 20, 2006, Jacobs filed a Petition to Transfer Structured Settlement Payment Rights (Petition) in the Court of Common Pleas of Allegheny County. The Petition sought court approval to transfer her future rights of payment to Structured Asset Funding, LLC ("SAF"). Under the proposed purchase agreement, Jacobs would assign 180 monthly payments in the amount of $1,450 per month from March 1, 2008 to February 1, 2023, $75,000 of the $120,000 lump sum payment due on June 1, 2012, and $100,000 of the $150,000 lump sum payment due on June 1, 2017 (an aggregate amount of $436,000). In exchange, SAF would pay Jacobs $143,000.

The Petition averred that the parties had complied with all of the requirements of section 4003 of the SSPA. The Petition also averred that the transfer would be in the best interest of Jacobs and her family, because her husband was recently injured at work, debts were accumulating, the family home was in need of various repairs, and her scheduled monthly payments through March 2008 were already transferred to Stone Street Capital. The Petition, however, did not describe the details and circumstances surrounding Jacobs's previous transfer to Stone Street Capital, nor did it mention the manner in which Jacobs spent the money she received.

¶ 7 On April 21, 2006, Jacobs's counsel presented the Petition in Motions Court to the Honorable R. Stanton Wettick, Civil Division Administrative Judge, and requested that a hearing be scheduled pursuant to section 4004 of the SSPA. On April 26, 2006, Judge Wettick declined to set a hearing date and denied Jacobs's petition without holding an evidentiary hearing because the facts averred in the petition, if established, precluded him from making a finding that the transfer would be in Jacobs's best interest. In reaching his conclusion, Judge Wettick found that after reviewing the Petition, "there [was] no explanation as to the circumstances of the prior transfer [to Stone Street Capital] or any showing that the funds from the prior transfer were prudently used-petitioner's best interests are served by preserving an income stream." Trial Court Order, 4/26/06, at 1 (unnumbered). On May 9, 2006, Jacobs filed a notice of appeal. Following the trial court's order, she then filed a Rule 1925(b) Statement of Matters Complained of on Appeal. Judge Wettick, in turn, filed his Rule 1925(a) Opinion on July 20, 2006.

¶ 8 In his 1925(a) Opinion, Judge Wettick noted that "[i]n early May 2006, [he] prepared and made available to counsel for petitioners a document entitled *Requirements of Judge Wettick for Petitions to Transfer Structured Settlement Payments Rights,*" and he attached a copy of these guidelines to his opinion. Trial Court Opinion (T.C.O.), 7/20/06, at 4. According to Judge Wettick's *Requirements,* a payee must provide an affidavit that, *inter alia,* describes each previously filed petition to transfer and "itemize[s] the manner in which the money was used, including receipts and cancelled checks." T.C.O., 7/20/06, Attachment 1, at 2 (unnumbered). The *Requirements* further state that only "[i]f the petition and payee's affidavit ... state *prima facie* grounds for relief, the court shall enter an order scheduling a hearing date[.]" *Id.* Attachment 1, at 1 (unnumbered). Ultimately, Judge Wettick's *Requirements* are designed to ensure that a petitioner includes all relevant information in his/her petition and affidavit necessary to support a finding that the transfer is in the petitioner's best interest.

¶ 9 In explaining a trial court's role of making an independent determination that the transfer is in the best interest of the petitioner, Judge Wettick, in his 1925(a) Opinion, cited to his previous decision, *In Re: Johnny Bush,* 152 P.L.J. 207, 208 (2004), where he stated:

I find to be persuasive the description of the role of the court set forth in a memorandum written by Honorable Gene D. Cohen of the Court of Common Pleas of Philadelphia County, No. 03714, September Term 2003, *In Re: Petition to Transfer Structured Settlement Payment Rights of Mario Curto.*

In that case, the petitioner sought court approval to permit the purchase for $25,000 of an annuity valued at $38,627. The court stated that the Structured Settlement Protection Act places the burden on the petitioner to establish that the transfer is in the petitioner's best interests:

In a sense, the Structured Settlement statute places the Court in the position of a guardian of a person who stands in the presumptive position of the defenseless recipient of a benefit. It is for the Court to determine, as a guardian would, on an independent basis, whether the transaction serves the best interests of an unsophisticated (if not incompetent) person. pp. 2–3.

The intent of the Structured Settlement Protection Act, according to this court, "is to ensure that an otherwise financially defenseless and possibly injured individual would receive a regular, sustaining source of income. Unless the factual record sufficiently supports a compelling and reasonably informed necessity that the plaintiff receive a lump sum discounted payment, this Court is reluctant to approve any petition akin to the one before it on the thin record offered in support" (p. 4). Using this standard, the court ruled that the proposed transfer would operate against the best interests of the petitioner because it would be hazardous to the petitioner's future to entrust him with a lump sum payment rather than receipt of regular payments. T.C.O., 7/20/06, at 2. At another point in the Opinion, Judge Wettick elaborated on the procedure he employs to review an SSPA petition:

I require a petition to transfer structured settlement payment rights to contain the information that a court needs to consider in making a determination as to whether the proposed transfer is in the best interests of the payee. I review the petition before scheduling a hearing. If the petition contains insuffi-

cient information, I deny the petition in a court order which briefly describes what needs to be addressed in any amended petition that the petitioner may seek to file.[2] If the petition contains factual allegations that preclude me from finding that the transfer is in the payee's best interests, I deny the petition in a court order which briefly describes my reasons for denying the petition.[3] If the petition, on the other hand, sets forth sufficiently detailed factual allegations that, if established, may support a finding that the transfer is in the payee's best interests, I schedule a hearing on the petition.

\* \* \* \*

2. The denial of a petition does not prevent the petitioner from filing an amended petition which contains additional information or a modified agreement to transfer structured settlement payment rights.

3. For example, my court order may state "petition is denied because a 23.4% interest rate is excessive" or "petition is denied because income stream that petitioner seeks to transfer in order to purchase a car is needed to pay child support."

*Id.* at 3. In concluding his Opinion, Judge Wettick stated:

Since the Act requires a showing that the transfer is in the best interests of petitioner, it is the obligation of counsel to set forth information that is clearly required in order for the court to make this determination of whether the proposed transfer is in the best interests of petitioner and her dependents.

*Id.* at 10.

¶ 10 Jacobs now appeals to this Court, raising the following questions for our review:

1. Did the [trial] court err by failing to follow the mandatory procedural provisions set forth in the [SSPA], 40 P.S. §§ 4001–4009?

2. Did the [trial] court err by denying Appellant's Petition to Transfer on the merits based on a finding that the transfer was not in Appellant's best interests, without first scheduling and holding the hearing mandated by 40 P.S. § 4004?

3. Did the [trial] court err by denying the Appellant her right to a hearing to consider [the Petition], thereby denying her the right to freely sell, alienate, assign or transfer her property rights, rights specifically granted by the Pennsylvania legislature through the provisions of the [SSPA] (subject to the restrictions of the [SSPA]), in violation of her procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution and Article I, Section I of the Pennsylvania Constitution?

4. Did the [trial] court err by denying the Appellant her right to a hearing to consider her Petition to Transfer Structured Settlement Payment Rights, thereby precluding the Appellant from responding to the court's concerns or offering to the court any "explanation as to the circumstances of the prior transfer or any showing that the funds from the prior transfer were prudently used[?]"

Brief for Appellant at 4. The National Association of Settlement Purchasers and Peachtree Settlement Funding have filed *amicus curiae* briefs in support of Jacobs's position.

¶ 11 Initially, we note that Jacobs's first two questions on appeal are essentially duplicative, as they both claim that section 4004 of the SSPA required the trial court to hold a hearing before disposing of her Petition on the merits. Consequently, given their overlap, we combine Jacobs's first

two questions and address them together as a single question.

 ¶ 12 In her first and second questions, Jacobs contends that the trial court erred by denying her Petition and finding that the transfer was not in her best interest without first holding an evidentiary hearing, which she argues is required by the plain and unambiguous language of section 4004. Brief for Appellant at 13–14. To support her position, Jacobs cites numerous court of common pleas cases that appear to have held a hearing, asserting that "[w]ith the recent exception of the Court of Common Pleas of Allegheny County, all other counties schedule and hold hearings as a matter of course, without regard to whether the proposed transfer is in a petitioner's best interests and without regard to whether the petition is ultimately approved or denied." Brief for Appellant at 18 (footnote omitted). These common pleas decisions, however, have never held that the plain language of section 4004 mandates a hearing, and it appears that the trial courts that schedule a hearing do so as a matter of personal choice, not as a matter of statutory compulsion. *See* Brief for Appellant at Appendix C–Q (collecting cases). Only one common pleas decision, *In Re: Joseph Michael Kulick,* 2004–C2762 (Lehigh County November 2004), suggests in *dicta* that section 4004 "contemplates" a "hearing date," but the trial court in that case denied the SSPA petition without holding a hearing, because the petitioner failed to include the underlying structured settlement agreement and other relevant documentation. Brief for Appellant at Appendix H, 4–5 (attaching *Kulick*). Therefore, we conclude that the cases Jacobs cites in her brief are neither on point nor instructive, and as a result, do not lend credence to her argument.

¶ 13 We now address Jacobs's claim insofar as it involves the statutory interpretation of section 4004 of the SSPA, which provides:

§ 4004. **Jurisdiction; procedure for approval of transfers**

The court of common pleas of the judicial district in which the payee is domiciled shall have jurisdiction over any petition as required under section 3 for a transfer of structured settlement payment rights. Not less than 20 days prior to *the scheduled hearing on any petition* for authorization of a transfer of structured settlement payment rights under section 3, the payee shall file with the court and serve on the transferee a notice of the proposed transfer and the application for its authorization, including in such notice a copy of the payee's petition to the court, a copy of the transfer agreement, a copy of the disclosure statement required under section 3, notification that the transferee, the structured settlement obligor or the annuity issuer is entitled to support, oppose or otherwise respond to the payee's petition, either in person or by counsel, by submitting written comments to the court or by *participating in the hearing and notification of the time and place of the hearing* and notification of the manner in which and the time by which written responses to the petition must be filed, which shall be not less than 20 days after service of the payee's notice, in order to be considered by the court.

40 P.S. § 4004 (emphasis added). Moreover, in order for a court to approve a petition to transfer structured settlement rights, the court must find that the payee fulfilled the enumerated conditions of section 4003, which includes a requirement that the payee establish that the transfer is in the payee's best interest:

§ 4003. **Conditions to transfers of structured settlement payment rights** (a) PETITION.—No transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment to any transferee of structured settlement payment rights unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that:

\* \* \* \*

(3) The payee has established that the transfer is in the best interests of the payee or his dependents.

40 P.S. § 4003(a)(3).

¶ 14 Issues involving statutory interpretation present questions of law for which our standard of review is *de novo* and our scope of review is plenary. *See Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766, 770 (2006). "In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746, 748 (1995). When analyzing particular words and/or phrases, we construe them according to the rules of grammar and consider the context in which they are used. *See* 1 Pa.C.S. § 1903; *Commonwealth v. Ostrosky*, 866 A.2d 423, 429 (Pa.Super.2005). This Court does not have the authority to insert a word or additional requirement into a statutory provision where the legislature has failed to supply it. *See Commonwealth v. Rieck Inv. Corp.*, 419 Pa. 52, 213 A.2d 277, 282 (1965); *Nimick v. Shuty*, 440 Pa.Super. 87, 655 A.2d 132, 136 (1995). Since there is a presumption that the General Assembly intended a statute to be effective, we must not read a section of a statute in isolation, but rather, should view it with reference to, and in light of, other sections of the statute. *See Lopez*, 663 A.2d at 748.

¶ 15 Relying on section 4004's heading, "procedure for approval of transfers," and reference to "the scheduled hearing" and "the hearing," Jacobs contends that a plain and unambiguous reading of the statutory text compels the conclusion that a trial court must hold a hearing to evaluate whether a proposed transfer is in the payee's best interest. Brief for Appellant at 14. Because Jacobs does not claim that section 4004 is facially ambiguous, we may not consider the issue of whether the statutory language is ambiguous. *See Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1192 (Pa.Super.2007) (stating that "an appellate court is not to raise sua sponte issue[s] which it perceives in the record where, as here, those issues are not presented at the appeal level.") (citation and internal quotation marks omitted). Consequently, we need not delve into legislative history or the other considerations enunciated in the Statutory Construction Act to decide whether the General Assembly intended to provide for a mandatory hearing. *See* 1 Pa.C.S. § 1921(c); *Ramich v. W.C.A.B. (Schatz Elec., Inc.)*, 564 Pa.656, 770 A.2d 318, 322 (2001) ("Only when the language of the statute is ambiguous does statutory construction become necessary."). Instead, as Jacobs suggests, this case can be resolved by analyzing the plain meaning of the statute's language. *See Lopez*, 663 A.2d at 748. Upon review, we conclude that while section 4004 may contemplate and/or presume a hearing, it does not expressly require that one be held preceding the denial of an SSPA petition.

¶ 16 When viewed in their proper grammatical context, the isolated phrases, "the

scheduled hearing" and "the hearing," are not modified, expounded or circumscribed in any linguistic manner that suggest a hearing is mandatory. To the contrary, "the scheduled hearing" is located in a prepositional phrase that sets forth the time limit in which a payee must file notice to the transferee, settlement obligor or annuity issuer. Likewise, "the hearing" is later used in section 4004 as a noun denoting the means by which the transferee, settlement obligor or annuity issuer can respond to the petition, and also to describe the particular type of notice the payee must afford, *i.e.,* "the time and place of the hearing." Although section 4004 is entitled, "procedure for approval of transfers," its reference to "the hearing" is in the abstract, contemplating and/or presuming an instance where a hearing *may* be held, but not defining the circumstance(s) or dictating when it *must* or should be held. Therefore, considering the express language of section 4004 in its grammatical context, we conclude that it does not mandate that a trial court hold a hearing before denying an SSPA petition, particularly where the trial court finds that the averments of the petition are inadequate to permit a finding that the requested transfer is in the petitioner's best interest, as required by section 4003.

¶ 17 In the absence of statutory language making a hearing mandatory, there remains an unfilled gap between the filing of a petition and a trial court's denial of it under section 4003 and the theoretical notion of a hearing as stated in section 4004. *See* 40 P.S. §§ 4003; 4004 (specifying "[n]ot less than 20 days prior to the scheduled hearing on any petition for authorization of a transfer of structured settlement payment rights under section 3 ...."). We recognize that during the course of this appeal, on June 15, 2007, our Supreme Court issued a *per curiam* order

promulgating Pa.R.C.P. 229.2, which became effective on September 1, 2007. *See In Re: Promulgation of Rule 229.2 Governing Petitions to Transfer Structured Settlement Payment Rights,* No. 480 Civil Procedural Rules, Docket No. 5 (Pa.2007). Under this new Civil Rule, a trial court can deny an SSPA petition without holding a hearing if the petition does not contain factual allegations that support a finding that the transfer is in the petitioner's best interest. *See* Pa.R.C.P. 229.2(e) (effective September 1, 2007). For petitions that precede the applicability of Pa.R.C.P. 229.2, however, we conclude that a trial court could either hold a hearing as a matter of course following the filing of the petition, or alternatively, treat the petition as being governed by the rules of civil procedure that pertain to motions practice. *See* Pa.R.C.P. 208.1–208.4. Pursuant to these civil rules, a motion is required to set forth the material facts constituting the grounds for the relief sought and permit a trial court to dispose of a motion without holding an evidentiary hearing. *See* Pa. R.C.P. 208.2(a)(3) ("A motion shall ... set forth material facts constituting grounds for the relief sought[.]"); Pa.R.C.P. 208.4(a)(1) ("At the initial consideration of a motion, the court may enter an order that ... disposes of the motion[.]"). If a trial court treated the petition as a motion and dismissed it without holding a hearing, the aggrieved party could then appeal to this Court, and we would apply the standard of review that we typically use to resolve appeals from demurrers. *See Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004) ("Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint.").

¶ 18 Ultimately, by allowing a trial court the freedom to deny SSPA petitions that lack a sufficient factual basis, we believe

that the trial court is better able to control its own docket and allocate its resources. More significantly, our decision empowers a trial court to effectuate the underlying public policy embodied in the SSPA. By ensuring that a petition adequately avers that the transfer will be in the petitioner's best interest, the trial court is acting in its guardianship role, preliminarily screening out those petitioners who will be unable to carry their burden of establishing that the transfer is in their best interest at a hearing. *Cf. Power by Power v. Tomarchio,* 701 A.2d 1371, 1374–75 (Pa.Super.1997) (discussing the court's role in protecting the best interest of a minor when considering a petition to approve settlement agreement under Pa.R.C.P.2039(a)). This active oversight on the part of the trial court, in turn, advances the SSPA's primary objective of safeguarding recipients of structured settlements from the transferees that seek to persuade them to sell their future payments at sharp discount rates.

¶ 19 Our esteemed colleague advocates that "[a] petitioner should have the opportunity to present his or her reasons for seeking the sale directly to the judge in order to establish the circumstances that compelled him or her to seek the sale in the first instance." Dissenting Op. at 7. The dissent's position, however, does not confront basic, fundamental rules of civil practice and seemingly fails to realize that it is counsel's obligation to first plead these "circumstances" in an SSPA petition before proving them. For example, under the dissent's suggested rule of procedure, a personal injury plaintiff who filed a complaint would automatically be permitted to present testimony to a judge/jury regarding damages as a matter of right, even if such damages were not pled in the complaint, in order to "sway" the judge/jury. Dissenting Op. at 7. This, of course, is not how our civil system operates. If a complaint or amended complaint failed to al-

lege damages, it would be dismissed for legal insufficiency, regardless of whether the plaintiff did in fact suffer damages. *Sixsmith v. Martsolf,* 413 Pa. 150, 196 A.2d 662, 664 (1964) (dismissing complaint for failing to plead damages since "[d]amage or legal injury is essential to a right to sue in an action at law."). Likewise, here, if an SSPA petition fails to aver the petitioner's "real financial needs" and level of "sophistication," Dissenting Op. at 7, it too should be dismissed because this information is absolutely vital to a finding that the transfer is in the petitioner's best interest.

¶ 20 Given the longstanding traditions of civil litigation, we believe that as the party carrying the burden of proof, it is not asking too much of the petitioner to include facts that if established would support a finding that the transfer is in his/her best interest, especially since the trial court allows the petitioner to amend an SSPA petition once as a matter of right. *See* T.C.O., 7/20/06, at 3 n. 2 ("The denial of a petition does not prevent the petitioner from filing an amended petition which contains additional information or a modified agreement to transfer structured settlement payment rights."). Only when such facts are sufficiently pled should a petitioner be given the opportunity to testify and prove his/her allegations and the trial court the chance to assess credibility and accord weight to the testimony. This reading of section 4004 is in harmony with the procedural mechanism of newly-created Pa.R.C.P. 229.2. *See* Pa.R.C.P. 229.2 cmt. (effective September 1, 2007) ("The court will enter an order scheduling a hearing date only if the petition ... contain[s] factual allegations, which, if established, satisfy the requirements of [section 4003].").

¶ 21 For the above-stated reasons, we conclude that section 4004 does not require a hearing to be held preceding the dismiss-

al of an inadequate SSPA petition. Instead, the Act vests the decision to hold such a hearing to the trial court's discretion, which is now governed by Pa.R.C.P. 229.2. Jacobs's first and second question, therefore, do not entitle her to relief.

¶ 22 In her third question, Jacobs contends that "[t]he trial court's denial of a petition to transfer and its determination of a property owner's best interest without the hearing directed by the [SSPA] is a denial of a property owner's right to due process." Brief for Appellant at 26. Particularly, Jacobs claims that section 4002 of the SSPA provides her with property rights in her structured settlement payments. Brief for Appellant at 27 (citing 40 P.S. § 4002 (defining "Structured settlement payment rights" as "[r]ights to receive periodic payments under a structured settlement[.]"). "By its promulgation of the [SSPA]," Jacobs argues, "the General Assembly has specifically authorized the sale, transfer and alienation of those property rights, subject to the conditions set forth in the [SSPA.]" Brief for Appellant at 27. Therefore, according to Jacobs, she was deprived of her "property rights" without the guarantee of procedural due process under the 14th Amendment of the United States Constitution and Article I, Section I of the Pennsylvania Constitution. Brief for Appellant at 26–28.

¶ 23 After review of Jacobs's brief, we are unable to decipher precisely what argument(s) she is attempting to advance. Generally, the due process clause requires reasonable notice and opportunity to be heard before governmental action may *deprive* an individual of a significant property interest. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). "Property interests ... are created and their dimensions are defined by existing rules or understandings that stem

from an independent source such as state law[.]" *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In her brief, Jacobs does not articulate the specific type of property interest of which she was deprived. Rather, Jacobs asserts that section 4002 itself vests her with property rights-presumably an ownership interest in receiving her structured settlement payments pursuant to the Agreement. Assuming, *arguendo*, that section 4002 confers upon Jacobs such a property right, she nonetheless fails to explain how the trial court's order or the SSPA *deprived* her of that right: despite the trial court's order denying the Petition and the regulations imposed by the SSPA, Jacobs will still receive her payments as scheduled under the Agreement. Therefore, we find this aspect of Jacobs's due process claim unavailing.

¶ 24 Jacobs also appears to contend that she was deprived of her right to freely sell, transfer and alienate her settlement payments under the SSPA. " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). "An entitlement exists when there is an unqualified right to receive the benefit [under state law] or when all qualifications necessary to its receipt are satisfied." *Miller v. W.C.A.B. (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa.Cmwlth.2007).

¶ 25 Here, Jacobs does not claim that she has a liberty interest or a common law property right to freely transfer structured settlement payments at will and without governmental regulation or interference. Instead, Jacobs seemingly asserts that such a right stems from the SSPA. Brief for Appellant at 27. After review of the SSPA, we conclude that neither section 4002 nor any other provision confers upon Jacobs the unqualified right to transfer at will her structured settlement payments; in fact, the SSPA imposes specific conditions that must be met before a petitioner can transfer payments. Therefore, because the statute does not grant Jacobs the unconditional right to freely transfer and/or sell her structured settlement payments, her claim that she is entitled to do so is without merit. *See Gonzales*, 545 U.S. at 765, 125 S.Ct. 2796 ("If [the respondent] was given a statutory entitlement, we would expect to see some indication of that in the statute itself."); *Miller*, 918 A.2d at 812 ("An entitlement exists when there is an unqualified right to receive the benefit [under state law.]"). Consequently, this portion of Jacobs's due process claim is similarly wanting.

¶ 26 To support her constitutional challenge, Jacobs cites numerous cases in an attempt to analogize her situation to others where the procedural safeguards of due process were held to apply. Brief for Appellant at 27–29. In this case, however, the due process clause is not implicated since Jacobs has not established that she was deprived of a constitutionally protected property interest. *See Roth*, 408 U.S. at 569, 92 S.Ct. 2701 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Miller*, 918 A.2d at 812. Accordingly, we find it unnecessary to discuss the cases that Jacobs refer-

ences in her brief because they are distinguishable on this basis alone. Moreover, we recognize that in her statement of the questions presented, Jacobs advances a separate but related substantive due process claim. Brief for Appellant at 4. In the argument section of her brief, however, Jacobs abandons this contention by not addressing it. As such, her substantive due process argument is waived for purposes of appellate review. *See Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1380 (1995) (stating that all of the issues set forth in the statement of questions involved that are not addressed in the argument section are waived). Therefore, because Jacobs has failed to establish the deprivation of a constitutionally protected "property" interest, and did not support her substantive due process claim with appropriate discussion, we conclude that her third question lacks merit.

¶ 27 In her fourth and final question, Jacobs contends that the trial court erred by denying her the right to a hearing, "thereby precluding [her] from responding to the court's concerns or offering to the court any 'explanation as to the circumstances of the prior transfer or any showing that the funds from the prior transfer were prudently used[.]' " Brief for Appellant at 4. Although Jacobs lists this issue in her statement of the questions involved, she does not address or discuss it in the argument section of her brief. We conclude accordingly that Jacobs's fourth question is waived. *See Estate of Lakatosh*, 656 A.2d at 1380.

¶ 28 For the stated reasons, we affirm the trial court's order denying Jacobs's Petition without holding an evidentiary hearing.

¶ 29 Order **AFFIRMED.**

¶ 30 BOWES, J., files a Dissenting Opinion.

## DISSENTING OPINION BY BOWES, J.:

¶ 1 In my view, Appellant raises the meritorious position that the Structured Settlement Protection Act, 40 P.S. §§ 4001–06 (the "Act"), envisions the conduct of a hearing. Specifically, on three occasions, in section 4004, the article "the" precedes the word "hearing." Thus, immediately after designating the court of jurisdiction for a petition under the Act, that section states that "[n]ot less than 20 days prior to **the** scheduled hearing on any petition for authorization of a transfer of structured settlement payment rights under section 3, the payee shall file with the court and serve on the transferee a notice of the proposed transfer. . . ." Similarly, at two subsequent junctures, the same article appears prior to the term hearing. By using "the" rather than "a" hearing, the legislature unequivocally has demonstrated that it contemplated that a hearing will be held on a petition filed under the Act. As noted by the majority, this interpretation of section 4004's language is in accord with that reached by the vast majority of trial judges in this Commonwealth. The majority's construction of the term "the" has reduced that term to pure surplusage, in violation of the mandates of 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

¶ 2 Moreover, I agree with Appellant that the statute, as applied to her individual case, has deprived her of due process rights. Appellant owns the right to receive a stream of income. The right to sell property is a basic component of ownership that is well-established in the common law of this country. *See Perin v. Carey,* 65 U.S. 465, 494–95, 24 How. 465, 16 L.Ed. 701 (1860).

A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property. *See Soldal v. Cook County,* 506 U.S. 56, 61–65, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992). A seizure of property sufficient to implicate Fourth Amendment rights occurs where the seizure is unreasonable. *Id.* In determining whether a government seizure violates the Fourth Amendment, the seizure must be scrutinized for its overall reasonableness. *Id.* *Snead v. Society for Prevention of Cruelty to Animals,* 929 A.2d 1169, 1181 (Pa.Super.2007) (quoting *Wagner v. Waitlevertch,* 774 A.2d 1247, 1254 (Pa.Super.2001)).

¶ 3 To determine what process is constitutionally due, the United States Supreme Court has utilized the balancing of three factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

*Gilbert v. Homar,* 520 U.S. 924, 931–32, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Also pertinent to the determination of what process is due are the length and finality of the deprivation. *Id.* Thus, in *Gilbert,* the Court analyzed whether a hearing was required before the government could cease a stream of income to which the recipient had a statutory right. In concluding a pre-cessation hearing was not required, the Court specifically considered the fact that the recipient received a post-cessation hearing. In that case, a state employee was suspended without pay as soon as felony drug charges were filed against him. At issue was whether the employee was constitutionally entitled to a

hearing before the pay was suspended. In concluding that no hearing was compelled, the Supreme Court accorded great weight to the fact that the employee received a hearing on whether his pay should have been suspended soon after the pay was stopped.

¶ 4 Herein, Appellant presented a petition setting forth sufficiently compelling circumstances that a hearing, as required by the Act, should have been held. Specifically, Appellant was thirty-nine years old and a married mother of two children. As a teenager, she had been injured in an automobile accident and had settled her claim against the tortfeasor in 1987 in an agreement that provided for periodic payments as follows: 1) 60 monthly payments of $1,900.00 from July 1, 1987, to June 1, 1992; 2) 60 monthly payments of $2,150.00 from July 1, 1992, to June 1, 1997; 3) 60 monthly payments of $2,400.00 from July 1, 1997, to June 1, 2002; 4) 60 monthly payments of $2,650.00 from July 1, 2002, to June 1, 2007; and 5) 240 monthly payments of $2,900.00 from July 1, 2007, to June 1, 2027, and for the rest of Petitioner's lifetime thereafter. The agreement also provided for the following lump sum payments of: 1) $10,000.00 on June 1, 1992; 2) $20,000.00 on June 1, 1997; 3) $40,000.00 on June 1, 2002; 4) $80,000.00 on June 1, 2007; 5) $120,000.00 on June 1, 2012; and 6) $150,000.00 on June 1, 2017. The obligation to make the periodic payments was assigned to and funded by the acquisition of an annuity.

¶ 5 On March 30, 2006, Appellant executed a structured settlement payment right purchase and assignment agreement (the "Purchase Agreement"). The Purchase Agreement provided for the assignment to Structured Asset Funding, LLC ("SAF"), of Appellant's right and interest in receiving 180 monthly payments each in the amount of $1,450.00, beginning with the payment on March 1, 2008, through February 1, 2023, plus one lump sum payment in the amount of $75,000.00 due on June 1, 2012, and one lump sum payment in the amount of $100,000.00 due on June 1, 2017. In exchange, she was to receive the net sum of $143,000.00, for an effective annual discount rate for the transaction of 13.97%.

¶ 6 Thus, after deduction for the payments to be transferred to the SAF, Appellant would continue to receive the remaining portions of the periodic payments consisting of partial monthly payments in the amount of $1,450.00, beginning with the payment on March 1, 2008, through February 1, 2023, the entire monthly payment in the amount of $2,900.00 beginning with the payment on March 1, 2023, through June 1, 2027, and for the rest of her lifetime thereafter, and partial lump sum payments of $45,000.00 due on June 1, 2012, and $50,000.00 due on June 1, 2017.

¶ 7 On April 20, 2006, Appellant filed a petition to transfer structured settlement payment rights in the Court of Common Pleas of Allegheny County, Pennsylvania, citing the Act as enabling authority. Therein, Mrs. Jacobs alleged that all of the statutory requirements of the Act had been complied with, that the transfer was in her best interests, and that there was no adverse tax impact on the interested parties. She therefore requested the court to approve the proposed transfer.

¶ 8 In her petition, Mrs. Jacobs alleged that her husband was injured and unable to work. She had applied for consolidation and home equity loans and had been denied, and she intended to satisfy with the money from SAF outstanding bills, loans, medical and orthodontia expenses, and other debts including property taxes totaling in excess of $54,000.00. She also needed to make home repairs.

**1170**

¶ 9 Appellant noted that prior to the Act's enactment, she assigned her payments through March 2008, as well as the lump sum payment of $80,000.00 due on June 1, 2007 to a different purchaser.

¶ 10 Appellant has been deprived of her right to alienate her property, which is a significant property interest. This deprivation may well be erroneous but as an appellate court, we have been denied an adequate record upon which to review the trial court's decision. Given the present circumstances, there is every indication that Appellant will never have the opportunity for such a hearing in Allegheny County. It is not unduly burdensome for the court system to devote three or four hours of its resources to allow Appellant the opportunity to be heard, and the governmental interest in this case is virtually non-existent since it is the function of the court system to be available to litigants.

¶ 11 The United States Supreme Court has

consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975–2976, 41 L.Ed.2d 935 (1974). *See, e.g. Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 596–597, 51 S.Ct. 608, 611–612, 75 L.Ed. 1289 (1931). *See also Dent v. West Virginia*, 129 U.S. 114, 124–125, 9 S.Ct. 231, 234, 32 L.Ed. 623 (1889). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time

and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). *See Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914).

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

¶ 12 A hearing serves the laudable purpose of permitting a petitioner to voice his or her need to sell a structured settlement to the jurist in person. A petitioner should have the opportunity to present his or her reasons for seeking the sale directly to the judge in order to establish the circumstances that compelled him or her to seek the sale in the first instance. Thus confronted by the petitioner, a jurist may be more informed by the real financial needs presented by the petitioner's situation and can more appropriately gauge the petitioner's sophistication and susceptibility to financial predators. A hearing is a superior avenue of deciding this question over a review of a cold record, especially since the judge's decision may impact dramatically on a person's life. Accordingly, I dissent to the majority's decision in this case.