J-S16044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHRISTOPHER ANTHONY TAYLOR | |
| Appellant | No. 1168 MDA 2014 |

Appeal from the Judgment of Sentence June 17, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003093-2012

BEFORE: PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                               **FILED JULY 07, 2015**

Christopher Anthony Taylor appeals from the judgment of sentence imposed on June 17, 2013, in the Court of Common Pleas of York County, made final by the denial of post-sentence motions on June 20, 2014. On March 8, 2013, a jury convicted Taylor of statutory sexual assault, aggravated indecent assault (complainant is less than 16 years of age), indecent assault (complainant is less than 16 years of age), unlawful contact with a minor (sexual offenses), involuntary deviate sexual intercourse ("IDSI") (complainant is less than 16 years of age), corruption of minors (defendant is 18 years of age or older).[1] The court sentenced Taylor to an

---

[1] 18 Pa.C.S. §§ 3122.1, 3125(a)(8), 3126(a)(8), 6318(a)(1), 3123(a)(7), and 6301(a)(1)(ii), respectively.

aggregate term of ten to 20 years' imprisonment. On appeal, Taylor raises several evidentiary issues and claims the verdict was against the weight of the evidence. Although we conclude the issues raised by Taylor on appeal are meritless, for the reasons set forth below, we are constrained to vacate the judgment of sentence, and remand for resentencing.

Taylor was a volunteer firefighter at the Dillsburg Citizens' Hose Company #1, who engaged in a sexual relationship with the victim, a fourteen-year-old junior firefighter for a year-and-a-half. The victim indicated the relationship began in March of 2010, when she gave him her phone number, and the two called or texted one another. Then, in June of that year, they engaged in oral sex at his apartment for the first time. Taylor and the victim eventually progressed to sexual intercourse, which the victim testified occurred on a daily basis. The relationship became rocky, to the point that they were not speaking to one another, in August of 2011 because the victim saw Taylor with another girl at his house, and subsequently ended in November of 2011, when the victim's mother reported Taylor to the police. Taylor was arrested and charged with the aforementioned crimes. A three-day jury trial began on March 6, 2013.[2] The jury convicted Taylor of all counts.

---

[2] Taylor took the stand at trial and denied all of the allegations. He testified he had a strictly professional relationship with the victim. N.T., 3/6/2013-
*(Footnote Continued Next Page)*

- 2 -

Prior to sentencing, Taylor's counsel filed a post-verdict motion, and a motion to withdraw. The court denied counsel's motion to withdraw and indicated counsel could make another request at the time of sentencing. On June 17, 2013, the court sentenced Taylor to concurrent terms of three to six years for statutory sexual assault, five to ten years for aggravated indecent assault, one to two years for indecent assault, ten to 20 years for IDSI,[3] and three to six years for corruption of minors.[4] The court also granted counsel's request to withdraw.

New counsel was subsequently appointed and filed a petition to treat Taylor's previously filed post-verdict motion as a timely filed post-sentence motion on July 17, 2013. The trial court granted this motion and ordered counsel to file any amendments to the post-sentence motion within ten days of receiving the trial transcripts. After counsel received the transcripts, the court scheduled a hearing on the motion for February 28, 2014. Following the hearing, the court granted the parties one month to file any supporting memoranda. Taylor's counsel filed a memorandum on March 7, 2014, and the Commonwealth filed its memorandum on March 18, 2014. On June 20,

_(Footnote Continued)_ _____

3/8/2013, at 235. He also stated the relationship "got violent and hostile," and he "was having issues with [the victim] stalking [him]." **Id.** at 239.

[3] The court imposed a mandatory minimum sentence, pursuant to 42 Pa.C.S. § 9718, with respect to the IDSI conviction. **See** N.T., 6/17/2013, at 15; Trial Court Opinion, 9/23/2014, at 2.

[4] The unlawful contact conviction was _nolle prossed_ at sentencing. N.T., 6/17/2013, at 15.

2014, the trial court denied Taylor's post-sentence motion. This appeal followed.[5]

Taylor raises the following four questions on appeal:

1. Whether the trial court erred in admitting the prior consistent statements of (1) [the victim]'s statements made to Noelle Williams about a sexual relationship with [Taylor] and (2) [the victim]'s electronic communications to [Taylor] and other parties when such statements were hearsay, offered substantively, and no limiting instruction was given regarding their ultimate use by the jury?

2. Whether admitting [the victim]'s prior consistent statements of (1) [the victim]'s statements made to Noelle Williams about a sexual relationship with [Taylor] and (2) [the victim]'s electronic communications to [Taylor] and other parties violates Pa.R.E. 613 when those statements went beyond mere rehabilitation and were instead used as substantive evidence by the Commonwealth?

3. Whether the trial court erred in applying the holding of **Commonwealth v. Hunzer**, 868 A.2d 498, 512 (Pa. Super 2005) when the Tender Years' Hearsay Exception was not raised, nor did it apply, to [Taylor]'s case?

4. Whether the guilty verdict is against the weight of the evidence because it is based off of inconsistent testimony from witnesses who had a motive to lie and who were not credible?

Taylor's Brief at 5.

While Taylor raised his first three issues separately, he discusses them together in his brief based on the nature of the claims. **Id.** at 11.

_____

[5] On July 14, 2011, the trial court ordered Taylor to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Taylor filed a concise statement on August 4, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 23, 2014.

Moreover, Taylor focuses his argument on the alleged court error in admitting prior consistent statements made by the victim that she was in a sexual relationship with Taylor *via* the testimony of the victim's friend, Williams. **Id.** Accordingly, we will confine our analysis to this aspect of his claim.[6]

Specifically, Taylor contends Williams' "testimony did not rehabilitate [the victim], but was cumulative hearsay testimony that corroborated [the victim]'s corrupt motive for claiming she was in a sexual relationship with him." **Id.** Taylor acknowledges that pursuant to Pennsylvania Rule of Evidence 613, prior consistent statements are admissible in situations where a witness has been discredited. However, he indicates, "To be admissible to rebut a charge of improper motive, the prior consistent statement must have been made **before** the motive to lie existed." **Id.** (emphasis added). Here, Taylor argues that in admitting the contested testimony, the trial court did not address "whether the consistent statement was made before or after the

---

[6] With respect to his third issue, that the trial court erred in applying the holding of **Hunzer**, **supra**, because the tender years' hearsay exception does not apply to the present case, we note that he appears to abandon this issue in his brief, and therefore, it is waived. **See** Taylor's Brief at 13 n. 2 (With respect to **Hunzer**, "[c]ertain statements were admitted pursuant to the Tender Years Exception. The victim in this case was over 12 years old. Thus, Tenders Years is inapplicable."); **see also In re Jacobs**, 936 A.2d 1156, 1167 (Pa. Super. 2007) (finding issue waived because appellant did not address it in argument section of appellate brief). Nevertheless, even if he did not abandon the claim, the trial court properly addressed the issue in its Rule 1925(a) opinion. **See** Trial Court Opinion, 9/23/2014, at 4-5.

corrupt motive arose." *Id.* at 12. He states that while the victim's version of events is that they engaged in a sexual relationship, he claims "she made it all up from the beginning based on a fantasy." *Id.* at 13 (footnote omitted). Moreover, Taylor points to evidence that in September of 2010, the victim discovered he was dating an "age-appropriate woman", and became hostile and violent, which demonstrated her "corrupt motive." *Id.* at 14. Therefore, when the victim told her friend in December of 2010, after the corrupt motive arose, about the relationship, her statements were inadmissible hearsay. *Id.* at 15. Lastly, Taylor asserts the admission of Williams' testimony is not harmless error because "[p]ermitting Ms. Williams to corroborate [the victim]'s corrupt motive provided an unfair advantage to [the victim] when weighing her testimony to that of Mr. Taylor's." *Id.* at 16.

Our standard of review regarding the admissibility of evidence is well settled:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Handfield*, 34 A.3d 187, 207-208 (Pa. Super. 2011) (quotation omitted).

With respect to the admission of prior consistent statements and the allegation of a witness's corrupt motive, we are guided by the following:

Pa.R.E. 613 provides, in relevant part … :

> Rule 613. **Prior statements of witnesses**
>
> ***
>
> (c) **Evidence of prior consistent statement of witness**.
>
> Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness' denial or explanation.

Pa.R.E. 613(c) (bold in original).

> The comment to this rule relevantly provides that "under Pa.R.E. 613(c), a prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence." *See Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 301 (1998) (stating: "As a general rule, a prior consistent statement is hearsay, and its admissibility is dependent upon an allegation of corrupt motive or recent fabrication. Additionally, such statements have been admitted in response to an allegation of faulty memory.")

*Commonwealth v. Baumhammers*, 599 Pa. 1, 51, 960 A.2d 59, 89-90 (2008).

"A prior consistent statement is admissible only if it is made before the declarant has a motive to fabricate." *Commonwealth v. Smith*, 609 Pa. 605, 17 A.3d 873, 891 (Pa. 2011) (citations omitted).

> When considering the admissibility of prior statements, the importance of timing has often been emphasized. ***See, e.g., Commonwealth v. Hutchinson***, 521 Pa. 482, 556 A.2d 370 (1989) (requiring that, to be admissible, a prior statement must have been made before any corrupt motive has arisen). ***See also*** Pa.R.E. 613(c) comment ("When the witness admits and explains the inconsistent statement, the use of the consistent statement will depend upon the nature of the explanation and all of the circumstances that prompted the making of the consistent statement; the timing of that statement, although not conclusive, is one of the factors to be considered.").
>
> ***Commonwealth v. Montalvo***, 604 Pa. 386, 407, 986 A.2d 84, 96 (2009).

***Handfield***, 34 A.3d at 208. Furthermore, "[w]here … it is apparent that the defense centers around impeaching the credibility of a witness, a prior consistent statement may, at the discretion of the trial court, be admitted before impeachment." ***Commonwealth v. Beale***, 665 A.2d 473, 475-76 (Pa. Super. 1995), *citing* ***Commonwealth v. Smith***, 540 A.2d 246, 258 (Pa. 1988).

Here, the trial court found the following:

> The Court finds that ***Commonwealth v. Hunzer*** is instructive regarding the instant matter. 868 A.2d 498 (Pa. Super. 2005). In the instant case, [Taylor] proffered a theory that the victim fabricated [Taylor]'s sexual conduct and that the victim had a motive to lie. Under the rules of evidence, evidence of a prior consistent statement is admissible for rehabilitation purposes if opposing counsel had an opportunity to cross-examine the witness, and the evidence is offered to rebut an express or implied charge of fabrication or improper motive. Pa.R.E. 613(c). Case law further elaborates that "prior consistent statements may also be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment." ***Hunzer***, 868 A.2d at 512 (quoting

> ***Commonwealth v. Willis***, 552 A.2d 682, 691-92 (Pa. Super. 1988)). The ***Hunzer*** court further reasoned that this situation would include the testimony of child victims of sexual assaults. ***Id.***
>
> After considering this rule of evidence and applicable case law, the Court concludes that it did not err by allowing evidence of the victim's prior consistent statements to be admitted during trial. As mentioned in his memorandum to the Court, [Taylor] still proceeds on a theory of fabrication and improper motive. Express charges of fabrication and improper motive are specifically enumerated exceptions to the general inadmissibility of prior consistent statements. See Pa.R.E. 613(c). Since [Taylor] had an opportunity to cross-examine the witness used at trial to produce this evidence, the Court properly admitted the evidence of the victim's prior consistent statements. Additionally, this case presents one of the special situations presented in ***Hunzer***, namely, that the case involves a child victim of sexual assault.

Order, 6/20/2014, at 1-2.

We agree with the trial court's well-reasoned analysis. A careful review of the record indicates that the testimony was elicited in response to the defense's theory that the victim fabricated the entire relationship. Defense counsel began this attack during opening statements with explicit assertions that the victim's allegations were false:

> So, basically our defense will be, here's a young 14-year-old for 14 months, meets her trainer at the fire department, her neighbor and **becomes fixated** on him. And you'll hear the circumstances of how she would visit that apartment every time.
>
> He's 24 years old. He's a good looking fellow. He was dating actually three girls during the course of this. Every time he would have a guest over to his apartment, she would show up. She **would be threatening**. She **would raise a scene**. He complained to multiple people. In fact, you'll hear evidence that he went to his instructor, his EMT instructor, and said, what

am I going to do about this?  This will [be] the first time that he has to tell his story.

I want you to listen carefully to her testimony and what our defense will be is here's a young 14-year-old, now she's 16, 17.  She still **doesn't realize the consequences** of the first report, and **she does not want to change her story**.  So this is going on like a snowball gathering size down the hill.  Listen carefully to the way she testifies.

You'll hear testimony that even after he was detained in York County Prison, people were coming over to his house when she purportedly had a boyfriend, she was **still coming over and bothering them**.  That's the extent of her **fixation**.

N.T., 3/6/2013-3/8/2013, at 65-66 (emphasis added).

The victim was the first witness, and she stated she told Williams that she was sexually involved with Taylor.  *Id.* at 79-80.[7]  The victim was subjected to extensive cross-examination and based on her response, a reasonable juror could infer whether or not she was fabricating her version of events.  *Id.* at 102-129.  Williams then testified, relaying that the victim told her about the relationship with Taylor in December of 2010.  *Id.* at 131-135.

The victim's account was also impeached by Taylor's own testimony that the sexual relationship did not occur, and that the victim was "violent" and "stalking" him.  *Id.* at 221-279.  Additionally, Taylor attempted to impeach the victim with testimony from his former girlfriend, Heidi Leahy,

_____

[7] The victim indicated that she told her friend in September of 2010.  *Id.* at 80.

regarding confrontations between herself and the victim and from Carol Hess, his EMT instructor, who he confided in and asked for advice regarding the victim. *Id.* at 206-215; 218-219.[8] As such, Williams' testimony regarding the victim's sexual relationship with Taylor was offered not to prove the truth of the matter asserted, but rather to rehabilitate the victim's credibility.

Moreover, with respect to Taylor's argument that the victim made these statements to Williams after she had a motive to fabricate, *e.g.* three months after discovering he was dating another woman, we find the timing is not so critical as Taylor failed to demonstrate the victim had an incentive to fabricate at the time she made the disclosures in question. In **Commonwealth v. Montalvo**, 986 A.2d 84 (Pa. 2009), the Pennsylvania Supreme Court indicated that "[w]hen considering the admissibility of prior statements, the importance of timing has often been emphasized." *Id.* at 96. The Supreme Court pointed to Pa.R.E. 613(c) comment, which states, "the use of the consistent statement will depend upon the nature of the explanation and all of the circumstances that prompted the making of the consistent statement; **the timing of that statement, although not conclusive, is one of the factors to be considered**." *Id.* (emphasis

_____

[8] Further review of the trial testimony indicates that Taylor sought Hess's advice regarding an incident, in which the victim broke into Taylor's apartment. *Id.* at 218.

added), *citing* Pa.R.E. 613(c), comment. Moreover, any notion of a motive to fabricate was thoroughly discussed during the testimony of the victim. Accordingly, we discern no abuse of discretion by the trial court in permitting the admission of the victim's prior consistent statements in order to corroborate her impeached testimony. Therefore, Taylor's first argument fails.

Next, Taylor claims that the verdict was against the weight of the evidence because "it is based off of inconsistent testimony from witnesses who had a motive to lie and who were not credible."[9] Taylor's Brief at 17. He contends that "had the jury carefully considered [the victim]'s testimony, the jury would have found several aspects of it incredible and found [him] not guilty." *Id.*[10] Additionally, he states, "[T]he jury failed to adequately consider that [the victim] had confronted several women that Mr. Taylor had been dating on multiple occasions, including once after Mr. Taylor was incarcerated for the charges she brought against him." *Id.* at 18.

Appellate review of a weight of the evidence claim is well-established:

_____

[9] Taylor properly preserved his challenge to the weight of the evidence by raising it at sentencing. His counsel renewed the claim at the February 28, 2014, motion hearing. *See* Pa.R.Crim.P. 607(A); N.T., 6/17/2013, at 9; N.T., 2/28/2014, at 14.

[10] For example, he points to her testimony, in which she stated he was uncircumcised when he is actually circumcised. *See* Taylor's Brief 17. Moreover, he indicates that the victim's mother did not report him to the police for another four months after she found out about the relationship. *Id.*

- 12 -

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. **Commonwealth v. Widmer**, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Champney**, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753; **Champney**, 574 Pa. at 444, 832 A.2d at 408.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014).

Here, the trial court found the following:

[Taylor] avers that no credible evidence exists because the jury based its verdict off of inconsistent testimony. Basically, [Taylor] reiterates the overarching argument that the witnesses for the Commonwealth had a motive to lie and, for this reason, were not credible. However, these arguments fail to note the standard for challenging the weight of the evidence and credibility determinations.

In this case, the jury was free to believe *all, part, or none* of the testimony presented at trial. The jury chose to believe the victim's account of the incident, which was corroborated by numerous Commonwealth witnesses, including the victim's mother and friend. Although [Taylor] took the stand in his defense, the jury did not find his testimony and explanation of the facts to be credible. The jury's decision to believe all, part or none of the testimony of these Commonwealth witnesses and [Taylor] does not shock this Court's sense of justice. As such, the Court concludes that the jury's verdict does not go against the weight of the evidence presented at trial.

Trial Court Opinion, 9/23/2014, at 5-6 (italics in original; citations omitted).

We agree with the court's well-reasoned analysis. Taylor fails to explain in what way the trial court abused its discretion in denying his weight claim. Rather, his argument consists only of attacks on the credibility of the witnesses and an assertion that the jury did not properly consider the evidence. Accordingly, he asks this Court to reweigh the evidence; however, we decline to do so. As our Supreme Court has made clear, we may not reweigh the evidence and substitute our judgment for the trial court's decision. **See Lyons**, **supra**. Moreover, it is well-established that the jury is free to believe all, part, or none of the testimony presented at trial. Here, the jury chose not to believe Taylor's version of events. Therefore, his weight claim also fails.

Nevertheless, our review of the record reveals the trial court imposed a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718, a statute that has been found to be constitutionally infirm in light of the United States Supreme Court's decision in **Alleyne v. United States**, 133 S.Ct. 2151 (U.S. 2013). **See Commonwealth v. Hopkins**, __ A.3d __, [98 MAP 2013] (Pa. June 15, 2015); **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*); **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014) (applying **Newman** to Section 9718). **See also Commonwealth v. Valentine**, 101 A.3d 801, 811-812 (Pa. Super. 2014) (vacating mandatory minimum sentence imposed pursuant to 42 Pa.C.S. §§ 9712 and 9718, even after a jury had determined triggering factors, because the unconstitutional

- 14 -

subsections of the statutes were not severable from the remainder of the statute). Although Taylor did not contest the imposition of the mandatory minimum sentence on appeal, "a challenge to a sentence premised upon **Alleyne** … implicates the legality of the sentence and cannot be waived on appeal." **Newman**, **supra**, 99 A.3d at 90. Moreover, this Court may address the legality of a defendant's sentence *sua sponte*. **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*), *appeal denied*, 95 A.3d 277 (Pa. 2014).

In **Wolfe**, **supra**, a panel of this Court applied the reasoning of the *en banc* Court in **Newman**, **supra**, and its progeny, to conclude that the mandatory minimum provisions in Section 9718 are facially unconstitutional. **Wolfe**, **supra**, 106 A.3d at 805. Although the **Wolfe** Court recognized the fact triggering the mandatory minimum sentence, *i.e.*, that the victim was less than 16 years of age, was actually "an element within the subsection of the IDSI statute under which [the defendant] was convicted[,]" the Court found it was, nonetheless, bound by the *en banc* decision in **Newman**, which held "that mandatory minimum sentence statutes in Pennsylvania of this format are **void in their entirety**." **Id.** at 805, 806 (emphasis in original). The Court concluded, "[a]s Section 9718 is indistinguishable from the statutes struck down in **Newman** and **Valentine**, we are constrained to conclude that Section 9718 is also facially void." **Id.** at 806.

Therefore, although we conclude the issues raised by Taylor on appeal are meritless, we are constrained to vacate the judgment of sentence, and remand for resentencing in light of the erroneous imposition of the mandatory minimum sentences imposed pursuant to Section 9718.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Panella, J., joins the majority decision.

Olson, J., concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015