**Robert POWER, Jr., a Minor, by Robert and Carla POWER, Natural Parents and Guardians and Robert Power, Sr., Ind., Appellees,**

v.

**Guiseppe TOMARCHIO and Andrea Dinapoli, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1997.
Filed Nov. 6, 1997.

L. Rostaing Tharaud, Philadelphia, for appellants.

Before KELLY, SCHILLER and BROSKY, JJ.

SCHILLER, Judge.

Appellants, Guiseppe Tomarchio and Andrea Dinapoli, appeal from the orders entered by the Court of Common Pleas of Delaware County denying appellees' petition to settle a minor's claim, and denying their own motions to set aside the arbitrators' award and to allow an appeal *nunc pro tunc*. We affirm.

## FACTS:

The procedural history of this case is intrinsic to understanding appellants' unusual appellate issue. The underlying action began when appellee, Robert Power, Jr., a minor, by his parents, Robert and Carla Power, and Robert Power, Sr., sought damages for injuries inflicted upon him by appellants' three Rottweiler dogs. Appellants then filed a cross-claim against appellees, Robert and Carla Power, based upon their alleged failure to properly supervise Robert Power, Jr.'s activities.

At the close of the pleadings, the case was assigned to the Honorable Clement J. McGovern, Jr., who held a pre-trial settlement conference. Judge McGovern estimated that the minor's claim was worth $15,000.00. Appellees agreed to accept this amount, but appellants refused this recommendation. The parties requested that the case proceed to arbitration. The parties, allegedly at Judge McGovern's insistence, then agreed that the arbitration would be binding.[1] How-

ever, prior to the Court entering the order remanding this case for binding arbitration, counsel for appellants and appellees orally entered into a high/low agreement, whereby Robert Powers Jr. (the minor) was assured a recovery of no less than $7,500.00, but no more than $20,000.00. For reasons that do not appear of record neither counsel informed Judge McGovern of this agreement. As was the case with Judge McGovern, the arbitrators were not advised of the high/low agreement.

The arbitrators heard the case on February 9, 1996. Following the hearing an award was entered in favor of Robert, Jr. for $35,000.00.[2] No appeal was filed. Thereafter, appellees' counsel petitioned the Court of Common Pleas for permission to accept an amount equal to the high end of the high/low agreement, i.e., $20,000.00, in settlement of the minor's claim.[3] This petition was heard by the Honorable Robert A. Wright, Sr., who denied the petition and refused to approve a settlement for less than the arbitration award. In response appellants moved to set aside the award and sought permission to appeal the arbitration award *nunc pro tunc*. This motion was also denied, and the judge entered judgment in favor of appellees on the award. This appeal followed.[4]

## DISCUSSION:

Appellants now raise three issues for appellate review: 1) whether the trial court erred in refusing to enforce the high/low agreement entered into by the parties; 2) whether the trial courted err in ordering the parties to proceed to binding arbitration; and 3) whether the trial court erred in refusing to set aside the arbitration award, or to allow appellants to appeal *nunc pro tunc*.

We begin our analysis by emphasizing that the Supreme Court of Pennsylvania has

---

1. Appellants contend that Judge McGovern compelled them to accept a binding arbitration, however, the record is devoid of any proof that they were forced into binding arbitration (as opposed to having mutually agreed to the procedure), and neither party filed an objection to the Judge's written order.

2. Of this amount, the arbitrators concluded that appellee, Carla Power, in her capacity as an

additional defendant, was responsible for $3,500.00.

3. Pursuant to Pa.R.Civ.P.2039 all claims involving a minor which are settled or "compromised" are subject to Court approval.

4. Appellees did not file a brief in this case.

made it clear that matters involving minors are never minor matters. Rule 2039 of the Pennsylvania Rules of Civil Procedure governs the role of the judiciary in actions where a minor is a party:

**Rule 2039. Compromise, Settlement, Discontinuance and Distribution**

(a) No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor.

Pa.R.Civ.P.2039.

■ The threshold question here is whether the parties' high/low agreement constituted a compromise or settlement of the action under Rule 2039. Appellants obviously argue that it was not, and contend instead that it was merely trial strategy designed to ensure that the minor obtained some relief; therefore, they argue, it did not require judicial approval. We disagree. The Pennsylvania Supreme Court has defined "compromise" as "the settlement of differences by mutual concessions; **an adjustment of conflicting claims.**" *Rochester Mach. Corp. v. Mulach Steel Corp.*, 498 Pa. 545, 549, 449 A.2d 1366, 1369 (1982). The term "settlement" has been defined as

[a] meeting of minds of parties to [a] transaction or controversy; an adjustment of differences or accounts; **a coming to an agreement. To fix or resolve conclusively; to make or arrange for final disposition.**

Black's Law Dictionary, Sixth Edition [citations omitted].

Clearly, the parties' high/low agreement satisfies the above definitions, and the mere fact that the agreement did not incorporate the word "settlement" or "compromise" does not alter its effect, which was to **conclusively agree** upon the floor and the ceiling of the minor's potential recovery.[5] The parties mutually agreed to restrict the amount of money that the minor was entitled to receive; this can only be categorized as a compromise, or

settlement on his claim. *See PMA Ins. Group v. W.C.A.B.*, 665 A.2d 538 (Pa.Cmwlth. 1995), *alloc. denied,* 544 Pa. 618, 674 A.2d 1078 (1996), where the Commonwealth Court held that a high/low agreement, not unlike the agreement in the case *sub judice,* was a "compromise settlement" under the Worker's Compensation Act (Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671). *See also Yackobovitz v. Transp. Authority,* 139 Pa. Cmwlth. 157, 590 A.2d 40 (1991), *appeal dismissed,* 533 Pa. 109, 619 A.2d 1354 (1993) (refers to high/low agreement as a settlement agreement).

■ Appellants next argue that Rule 2039 was only intended to "prevent minors from exploitation by weak, inept or dishonest counsel through cave-in settlements, exorbitant fee agreements or improper escrow arrangements,"[6] and because appellee's counsel was protecting the minor's recovery, the Court should not have overturned the agreement. We disagree that the purpose of Rule 2039 is limited to protecting the minor from his potentially dishonest counsel. Rule 2039 was promulgated to protect the interest of minor litigants in all phases of the litigations. *Klein v. Cissone,* 297 Pa.Super. 207, 443 A.2d 799 (1982). The Rule enables courts to prevent settlements which are unfair to the minors, and to ensure that the minor receive the benefit of the money awarded. Goodrich–Amram 2d § 2039:3 (1992). Thus, the courts were given the mandate to supervise all aspects of settlements in which a minor is a party in interest, *Estate of Murray v. Love,* 411 Pa.Super. 618, 625, 602 A.2d 366, 369 (1992), and in considering whether to approve a settlement, the Court is charged with protecting the best interests of the minor. *Id.*

■ In this case, the court was informed of the parties high/low agreement only after the arbitrators had awarded appellee $35,000.00. Thus, when appellee's counsel brought the petition for a minor's compromise requesting only $20,000.00, the Court

---

**5.** "What's in a name? That which we call a rose
By any other name would smell as sweet."
William Shakespeare, *Romeo and Juliet,* Act II, Scene ii.

**6.** Appellant's brief, p. 10.

was faced with two alternatives: (1) give effect to the parties' agreement (which did not have judicial approval), thereby giving the minor a lesser award than an independent panel found that the claim was worth; or (2) enter judgment for the arbitration award which had become final by the expiration of the appeal period. Faced with these two options, it was clearly in the minor's best interest to enter judgment on the arbitration panel's award. Thus the court was compelled to deny appellees' petition for a minor's compromise for the lesser amount.

■ Appellants next challenge Judge McGovern's order mandating **binding** arbitration.[7] They contend that Judge McGovern deprived them of the option of non-binding arbitration, as provided for under state and local rules. Although we agree with appellant that the trial court could not ordinarily deprive them of their right to non-binding arbitration, this issue was waived by appellants' failure to challenge the order prior to the start of the arbitration proceedings or **prior** to the arbitration award.[8] Indeed, while arguing before Judge Wright that the high/low agreement should be honored, appellants' attorney conceded that they agreed to a binding arbitration. *See* Notes of Testimony, *Power, et al. v. Tomarchio and Dinapoli*, October 9, 1996, p. 5. Thus, because appellants proceeded to binding arbitration without objection, and thereafter allowed the appeal period to expire, they cannot now argue that they were denied their right to non-binding arbitration simply because they are unhappy with the arbitrators' result.

■ Lastly, we find that there was no error in the trial court's refusal to allow appellants to appeal the arbitration award *nunc pro tunc.* It is well established that the extension of the filing period or the allowance of an appeal *nunc pro tunc* will be permitted only in extraordinary circumstances, which have been limited to fraud or some breakdown in the processes of the court. *See Moring v. Dunne,* 342 Pa.Super. 414, 493 A.2d 89 (1985).[9] Appellants contend that they did not appeal the arbitration award within the proscribed period because they did not anticipate that the Court would refuse to mold the verdict in accordance with the high/low agreement. However, this was the risk appellants assumed when they entered into the agreement without seeking explicit court approval. This is not a situation where court action precluded the filing of the appeal. *See Wilk v. Girard Bank,* 342 Pa.Super. 488, 493 A.2d 695 (1985) (lower court properly permitted an appeal *nunc pro tunc* where appellee's failure to file appeal within the thirty day period stemmed from his reliance on the advice of a court officer, and was not attributable to his own negligence); *State Farm Mutual Automobile Insurance Co. v. Schultz,* 281 Pa.Super. 212, 218, 421 A.2d 1224, 1227 n. 7 (1980) (mere neglect or mistake of appellant or his counsel is not considered a sufficient excuse for failure to file a timely appeal).

■ In closing, while we may accept appellants' claim that all parties were at all times acting in good faith, and that both parties' counsel perceived that they were acting in their client's best interest when they entered into the high/low agreement,[10] we must emphasize that Rule 2039 was specifically designed to remove from the litigants

---

7. Unfortunately, the record before us did not include any notes of testimony from the discussion that took place in front of Judge McGovern. Moreover, Judge McGovern did not supplement his Order with an opinion and we are without the benefit of his thoughts concerning the rationale behind his ordering binding arbitration.

8. We do, however, question whether the trial court should ever enter an order for binding arbitration in cases concerning a minor's claim.

9. Rule of Civil Procedure 1308(a) provides that an appeal must be taken "not later than thirty days after the entry of the award on the docket[.]" Additionally, Pa.R.C.P. 1307(d) provides that the only exception to this procedure is that the Court of Common Pleas may mold an award where the record discloses obvious errors in either mathematics or language of the award, and the court's power is limited to the correction of such patent errors. *See Lough v. Spring,* 383 Pa.Super. 85, 556 A.2d 441 (1989).

10. "Of sentences that stir my bile,
    Of phrases I detest,
    There's one beyond all others vile:
    'He did it for the best.' "
James Kenneth Stephen: *The Malefactor's Plea,* st. 1.

and their counsel the authority to subjectively determine what is right for the minor; the Rule makes the Court the final arbiter of what is in the minor's best interest. *See* Goodrich Amram 2d, *supra.* It is imperative that all counsel appreciate the role that the court must play in evaluating **any** agreement which affects a minor's recovery.

CONCLUSION:

The trial court's paramount concern under Pa.R.C.P.2039 is to protect the minor litigant's best interest, and we find no error in the court's refusal to set aside the arbitration award and to refuse to allow appellants to appeal *nunc pro tunc.*

Accordingly, the Order of the Court of Common Pleas of Delaware County is affirmed.

KELLY, J., concurs in the result.