Fecteau, Francis R., J.

INTRODUCTION

Plaintiff Carlotta Wright (“Wright”), brought this action for wrongful death on behalf of her deceased husband, Kenneth E. Wright (“Decedent”), against the defendants, David Kelleher (“Kelleher”), B&G Leasing, Inc. (“B&G”), George Weston Bakeries Distribution, Inc. (“GWBD”), George Weston Bakeries, Inc. (“George Weston”), Arnold Foods Company, Inc. (“Arnold Foods”), and Route Relievers, Inc. (“Route Relievers”). Wright specifically alleges that each of the defendants were directly or indirectly negligent when her husband was fatally injured after Kelleher struck him in a motor vehicle accident while making a delivery. The matter is now before this Court on defendants’, GWBD, George Weston, and Arnold Foods (collectively “defendants”), Motion for Summary Judgment. They assert that they are entitled to summary judgment because (1) the defendants cannot be held vicariously liable because at the time of these events Kelleher was an independent contractor and not subject to their control, and (2) the defendants were not negligent because they neither breached a duty owed to the Decedent nor owed a duly to the Decedent. Oppositions to this motion were filed by the plaintiffs and the defendant Kelleher. For the following reasons, the defendants’ Motion for Summary Judgment is DENIED.

SUMMARY JUDGMENT RECORD

The Summary Judgment Record contains the following undisputed facts and disputed facts viewed in the light most favorable to the nonmoving parties.
On December 15, 1999, Kelleher began work through a temporary employment agency as a shipping clerk at Entenmann’s, Inc. and later at Entenmann’s Sales Company, Inc. (collectively “Entenmann’s”). On April 23, 2000, Kelleher was employed by Entenmann’s as a shipping clerk and was required to join a union. While Kelleher was employed at Entenmann’s, Entenmann’s provided medical and disability benefits, vacation, personal and sick days, a pension plan and withheld taxes. Further, as an employee of Entenmann’s, Kelleher punched a time clock and reported to a supervisor on a daily basis.
In June 2001, Bestfoods Baking Distributing Company, Inc., now known as GWBD, advertised the sale of a distributorship business. The distribution rights were for the right to distribute Arnold Foods brand bakery products in the Fitchburg/Leominster area. Kelleher approached Steve Mutascio (“Mutascio”), a district sales manager for Arnold Sales Company, about purchasing the distribution rights. Mutascio interviewed Kelleher, asked employees about Kelleher’s work ethic, and informed him that he must have a valid driver’s license. Despite the fact that Kelleher was required to have a valid driver’s license, the defendants claim that he could “hire anyone to operate his business and deliver product to his customers.”
In June 2001, Kelleher voluntarily terminated his employment with Entenmann’s. On July 9, 2001 Kelleher executed a Distribution Agreement with GWBD and organized his business as Kelleher Distribution. Numerous other documents were executed at the time Kelleher signed the distribution agreement. *467 Kelleher contends that these documents were all provided to him by the defendants and that he was instructed where to sign in a very rushed fashion. After entering into the distribution agreement, Kelleher no longer paid union dues, no longer received medical, disability or pension benefits, and no longer received vacation or sick time.
Kelleher financed the purchase of the distributorship through loans he received from Banc of America (“BA”) and Distribution Services of America, Inc. (“DSA”). The defendants claim that these two financial institutions were independent of GWBD. Kelleher claims that BA and DSA were not independent of GWBD because GWBD presented these two financial institutions to Kelleher. The defendants contend that Kelleher was required to assign his rights in his accounts receivable to the lending institutions in order to secure his loans.
The Distribution Agreement provided that:
The parties intend to create an independent contractor relationship and it is of the essence of this Agreement that DISTRIBUTOR be an independent contractor for all purposes and DISTRIBUTOR shall only identify himself as such in all third party dealings ... As an independent contractor, DISTRIBUTOR has the right to operate the business as DISTRIBUTOR chooses, and shall bear all risks and costs of operating such business. DISTRIBUTOR has no authority to retain any person on behalf of BBDC [Bestfoods Baking Distribution Company]. It is expressly understood that DISTRIBUTOR has no claim, or right under any circumstances, to any benefits or other compensation currently paid by BBDC to employees, or hereafter declared by BBDC for the benefit of employees.
Kelleher purchased/leased a step-van for the operation of his business from B&G. He contends that the defendants recommended B&G to him and that the necessities of the job dictated that he purchase/lease a van. The defendants contend that Kelleher was free to purchase or lease any vehicle he wanted and that he received the names of leasing companies from other independent contractors. There is some dispute as to whether the defendants or Kelleher paid the sales tax, registration fees, and the excise tax to the van. Although Kelleher selected his own insurance company and purchased personal as well as business insurance, the plaintiffs claim that B&G controlled how much insurance Kelleher was required to purchase. Kelleher paid for all of the gas and maintenance for the van.
The defendants claim that Kelleher was an independent contractor who was free to conduct his business however he chose subject to a few exceptions. Kelleher and the plaintiffs dispute this contention and claim that Kelleher was an employee and that the distribution agreement was created simply to avoid liability. The defendants claim that “Kelleher purchased Arnold brand products from GWBD, took title and owned the product, and then sold the product to his customers.” Further, the defendants claim that Kelleher could purchase and sell products other than Arnold Foods products unrelated to GWBD and that Kelleher made his own business decisions and set his own schedule. Kelleher could decide what time he would pick up his product and in what order he would deliver the product to the customers on his route.
Kelleher contends that he did not own the products he delivered and that when he delivered the products they were still owned by GWBD exclusively. Kelleher testified that Mutascio instructed him not to deliver any products other than Arnold Food products. Further, Kelleher claims to have had little control over when he delivered the products. He claims that when he entered into the distribution agreement, each of the stores on his route had a delivery window in which he could deliver the products. Further, Kelleher claims that GWBD negotiated directly with chain stores with regard to delivery times, space allotment, display locations, and prices. The plaintiffs contend that Kelleher was not free to negotiate his own prices and that he was forced to sell his product at prices dictated by the defendants. Moreover, the motion record supports the fact that Kelleher did not bill the customers: he transmitted information about the transactions to the defendants through a wireless computer provided by the defendants, who in turn billed the customers and credited Kelleher with his commissions earned from those transactions.
The defendants admit that although Kelleher did not receive any formal training from GWBD, he did ride with a former temporary driver, George Senay (“Senay”), who showed Kelleher where the stores on his route were located. The defendants deny that Kelleher received any formal “training regarding proper operation of the truck, proper safety rules regarding a safe number of hours to be driving on the road and the dangers of fatigue.” The plaintiffs argue that Mutascio directed Senay[4] to take Kelleher with him on his bread deliveries. Further, the plaintiffs contend that Mutascio introduced Kelleher to shipping clerks and managers and trained him how to make stops, where to make deliveries, and how to stock the items on the shelves.
On or about December 15, 2001, defendant Kelleher caused a vehicle he was operating to collide with Decedent’s vehicle. The impact of the head-on crash caused Decedent’s death and injured the other passenger-plaintiffs, Tiarra Wright, Keshawn Wright, and Kinzaqui Winters. At the time of the accident, the vehicle Kelleher was operating was owned by B&G, which in turn is alleged to have been an agent of George Weston, GWBD, Arnold Foods and/or Route Relievers. Kelleher was in the process of making bread deliveries to specific retail vendors before the accident occurred.
*468 At the time of the accident, Kelleher had finished his deliveries for the day and had consumed enough alcohol to have a blood alcohol level well in excess of the legal limit for the operation a motor vehicle. The defendants contend that this shows that Kelleher was not acting within the “scope of his employment” even if this Court finds that there is a factual dispute as to whether Kelleher was an employee or independent contractor. They assert that Kelleher had completed his deliveries for the day and had finished working before he consumed the alcoholic beverages. Even if he were still working, the defendants claim that having consumed the amount of alcoholic beverages that the evidence indicates Kelleher had amounted to a break from the proper scope of his duties that would relieve the defendants of any liability for Kelleher’s actions. Kelleher contends that he was an employee and was still acting within the scope of his employment and claims that he had not completed his duties for the day until he entered data into the handheld computer that was provided by the defendants.

DISCUSSION

I.Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusory statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).

II.Negligence

To prevail on a claim of negligence in Massachusetts, a plaintiff must prove the following elements; (1) duty, (2) a breach of that duty, (3) damage to the plaintiff, and (4) a causal relationship between the defendant’s breach of duty and the plaintiffs purported damages. Bennett v. Eagle Brook Country Store, 408 Mass. 355, 358 (1990). In determining whether an employer should be held liable for the negligence of another under a theoiy of vicarious liability, “ [i] t is the right to control, as opposed to the actual control, that is determinative.” Peters v. Haymarket Leasing, Inc., 64 Mass.App.Ct: 767, 774 (2005). Ever an employer’s attenuated right of control over a seemingly very independent employee may give rise to liability. Id. As long as the employee’s conduct was subject to the employer’s control or right of control, vicarious liability may be imposed. Id. Proof of “a master-servant relationship is ordinarily a question of fact.” Id. at 773. See also Stern v. Lieberman, 307 Mass. 77, 79 (1940) (agency is a factual determination).

III.Issues of Material Fact Exist

Upon examination of the motion record, summary judgment is not appropriate in this case due to the existence of genuine issues of material fact, including a genuine dispute as to the material issue whether Kelleher was an independent contractor or employee at the time of the accident. This is supported by the following non-exhaustive list of subsidiary factors found within the motion record.
First, it is genuinely disputed as to whether Kelleher took title to the products that he was delivering and whether he was allowed to purchase and sell products other than Arnold Foods brand products. The defendants assert, and the language of the distribution agreement states, that Kelleher was able to sell any product of his choosing. Kelleher contends that the defendants would not have allowed him to sell products other than Arnold Foods brand products and that he was so instructed by Mutascio. This dispute bears upon the issue whether the defendants retained the requisite control over Kelleher so that he should be considered an employee, rather than an independent contractor.[5] Second, a genuine issue of material fact exists as to whether Kelleher was actually allowed to make and did make his own business decisions independent from the defendants, including the setting of his own schedule. The defendants claim that Kelleher was free to run his business as he saw fit, could pick up the products to be delivered when he wanted, and could deliver those products in the order he chose. Kelleher contends that he did not have control over when he was to deliver the products because the defendants had negotiated with many of the chain stores and narrow windows of time existed in which the products were to be delivered. Further, Kelleher contends that GWBD negotiated directly with chain stores with regard to space allotment, display locations, and prices. Kelleher asserts that he was not free to negotiate his own prices. Thus, whether Kelleher was free to make his own business decisions such as when to make deliveries and how to stock the products remains at issue. Third, whether Kelleher received training from the defendants and the extent thereof is at issue, with the defendants claiming that Kelleher *469 did not receive any formal training and that Senay merely showed Kelleher where the stores on his route were located, but countered by Kelleher who contends that he received training from Mutas cio with regard to how he should make the deliveries, where he should make the deliveries and how he should stock the shelves. Fourth, a disputed material fact exists as to whether Kelleher was actually permitted to allow others to deliver the products for him. The defendants, and the distribution agreement, state that Kelleher was free to hire people to help him with his route. Based upon Kelleher’s assertions that he was constantly instructed to do things differently than the distribution agreement stated and the fact that Kelleher was required to have a valid driver’s license, whether Kelleher could actually have hired and allowed another person to deliver the products for him, and/or whether the defendants retained control over that decision is in dispute.
Another genuine issue of material fact exists as to whether Kelleher was free to choose the type of vehicle he would use for his deliveries; Kelleher contends that the defendants referred him to B&G to purchase/lease a van. The defendants claim that Kelleher was free to choose any vehicle to use to deliver the products and that he received leasing information on leasing companies from other independent contractors. Further, there is a dispute as to whether Kelleher or the defendants paid the sales tax, registration fees and excise tax for the van. Further, Kelleher contends that B&G dictated how much insurance he was required to carry on the van. There is a genuine issue of material fact as to whether Kelleher had the discretion to lease or purchase the vehicle of his choosing from the supplier/dealer of his choosing.
As the foregoing issues of fact are genuine and material to the question of the fact and extent of the defendants’ control over Kelleher’s conduct on the date in question, the defendants have not met their burden of demonstrating the absence of a triable issue and that they are entitled to judgment in their favor as a matter of law, summary judgment is not appropriate.

ORDER ON MOTION

For the reasons stated herein, it is hereby OR DERED that the defendants’, George Weston Bakeries Distribution, Inc., George Weston Bakeries, Inc., and Arnold Foods Company, Inc., Motion for Summary Judgment pursuant to Mass.R.Civ.P. 56 be DENIED.

There is some dispute as to what company employed Senay at the time he “trained” Kelleher, but for purposes of this motion it suffices to say that there is a genuine issue of material fact as to what relationship existed between Senay’s employer and the defendants at the time Senay “trained” Kelleher.

For their contention that Kelleher was an independent contractor, the defendants seek support from the recent case of Commissioner v. Town Taxi of Cape Cod, Inc., 68 Mass.App.Ct. 426 (2007). However, that case, as well as that of Athol Daily News v. Board of Review, 439 Mass. 171 (2003), cited therein, are viewed as distinguishable from the facts at bar, in connection with the application of the “ABC test.” For example, in Town Taxi, the court observed that the drivers “had the freedom of choosing which shifts to work and were not obliged to respond to calls from Town Taxi regarding a prospective customer in the driver’s vicinity”; moreover, in Athol Daily News, it was noted that the newspaper distributors were free to deliver newspapers for anyone, even those of competitors. Regarding these areas of freedom from control, at the least, there is genuine dispute in the case at bar.