Agnes, Peter W., J.
This case is before the court on a Motion filed by the defendants George Weston Bakeries, Inc. (“GWB”), George Weston Bakeries Distribution, Inc. (“GWBD”) and Arnold Foods Company, Inc. (“Arnold”) (collectively “GWB defendants”). The GWB defendants seek to have the claims against themselves and defendant David Kelleher (“Kelleher”) dismissed or in the alternative ask that summary judgment enter in their favor. The GWB defendants allege that they recently learned that Kelleher has entered into an agreement with the plaintiffs that discharges him from liability. The plaintiffs argue that the GWB defendants misrepresent the facts, misconstrue the agreement between the plaintiffs and Kelleher, and violate Superior Court Rule 9D by failing to label this motion as one for reconsideration. For the reasons below, the GWB defendants’ Motion to Dismiss or, in the Alternative Motion for Summary Judgment is ALLOWED as to the claims against them based on vicarious liability/respondeat superior and DENIED as to the claim by the plaintiffs that the GWB defendants engaged in negligent hiring.
BACKGROUND
The facts surrounding Kelleher’s work history, purchase of a distribution route, and operation of the route have already been set forth in detail in this Court’s (Fecteau, J.) earlier Memorandum of Decision and Order on the Motion of the Defendants, George Weston Bakeries Distribution, Inc., George Weston Bakeries, Inc., and Arnold Foods Company, Inc., For Summary Judgment [22 Mass. L. Rptr. 466]. Those facts are incorporated by reference into this decision.
The conflict in this case arises out of an accident that occurred on December 15, 2001, at about 8:40 p.m., when Kelleher’s vehicle collided with a vehicle driven by the decedent Kenneth Wright (“Wright”). Wright was transporting his three minor grandchildren, Tiarra Wright, Keshawn Wright and Kinzaqui Winters at the time. Wright suffered fatal injuries from the accident. Kelleher was arrested at the scene of the accident and a breathalyzer test found his blood alcohol level was .17/. 18. He was subsequently convicted for drunk driving and motor vehicle homicide and incarcerated. He remains incarcerated.
The plaintiffs have settled their direct claims against defendants Route Relievers, Inc. and B&G Leasing, Inc. for $425,000. The plaintiffs have also received $1.3 million from Kelleher’s personal and automobile insurer, Commerce Insurance Company (“Commerce”), after Kelleher authorized the payments and gave up any claims against Commerce. The release document notes that Kelleher authorized Commerce to pay out his insurance policy limits without requiring the plaintiffs to release any of their claims against him; however, a letter between plaintiffs’ counsel and Kelleher’s counsel also notes that the plaintiffs have agreed not to pursue any of Kelleher’s personal assets to satisfy any judgment against him in this case. This letter, dated May 5, 2005, stated:
Following up on our discussion of today, my understanding is that under no circumstances will the plaintiff seek the personal assets of David Kelleher. Further, as discussed, we have agreed to a high-low arrangement with respect to any judgment which may be entered against Mr. Kelleher, the high being $1,300,000 and the low being $1,300,000. If this understanding is correct, please sign below and return to me at the earliest opportunify.
The letter was signed by both attorney DeSimone for the plaintiffs and attorney McGowan, representing Kelleher, and was not provided to GWB defendants’ counsel until recently.
Further letters between counsel for plaintiffs, Kelleher and Commerce discussing this agreement were recently provided to counsel for the GWB defendants on June 12, 2008. GWB defendants allege they *497 requested these exact type of documents from plaintiffs in April 2004. These letters detail how the plaintiffs agreed not to pursue the personal assets of Kelleher in return for his signing off on the release of the insurance funds.
DISCUSSION
The standard for addressing a motion for reconsideration is fairly discretionary and it has been stated that “[t]hough there is no duty to reconsider a case, an issue, or a question of fact or law, once decided, the power to do so remains in the court until final judgment . . .” King v. Globe Newspaper Co., 400 Mass. 705, 707 (1987), quoting Peterson v. Hopson, 306 Mass. 597, 601 (1940). It is “within the inherent authority of atrial judge to ‘reconsider decisions made on the road to final judgment.’ ” Sullivan v. Utica Mutual Ins. Co., 439 Mass. 387, 401 (2003), quoting Franchi v. Stella, 42 Mass.App.Ct. 251, 258 (1997).
Although the GWB defendants brought this motion as a motion to dismiss or in the alternative for summary judgment and their prior motion for summary judgment was denied, this Court uses its inherent authority to consider the new issues and evidence through its powers of reconsideration.
I. The Agreement Between Plaintiffs and Kelleher
The GWB defendants argue that the agreement between the plaintiffs and Kelleher by which the plaintiffs agreed not to pursue any of Kelleher’s assets and Kelleher agreed to sign off on his insurance policies so they would receive $1.3 million dollars qualifies as a settlement agreement and thus, Kelleher should be dismissed from this case as should all vicarious liability/respondeat superior claims arising from his actions. The plaintiffs argue that the agreement should not function as a settlement agreement that would invalidate their vicarious liability/respondeat superior claims against the GWB defendants.
Black’s Law Dictionary defines a settlement as “(a]n agreement ending a dispute or lawsuit.” Black’s Law Dictionary 1377 (7th ed. 1999). In turn, a high-low agreement is defined as “[a] settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiffs agreement to accept a maximum amount regardless of the outcome of the trial.” Black’s Law Dictionary 734 (7th ed. 1999). A high-low agreement may constitute a settlement even if it does not use the words “settlement” or “compromise.” Richard v. Wilde, 2001 WL 241523, at *4 (Mass.Super.Ct. Mar. 7, 2001) (Cratsley, J.) [12 Mass. L. Rptr. 669], citing Power v. Tomarchio, 701 A.2d 1371, 1373 (Pa.Super.Ct. 1997). See also, Fiegener v. Freeman-Oak Hül Health Sys., 996 S.W.2d 767, 771-73 (Mo.Ct.App. 1999) (high-low agreement constituted settlement); Malick v. Seaview Lincoln Mercury, 398 N.J.Super. 182, 190 (2008) (“a high low agreement is a type of settlement”). Where one party agrees to accept and another party agrees to pay a range of damages regardless of what amount a jury awards, such an agreement is a bargained-for exchange that determines a disputed issue, and thus a settlement. Richard, 2001 WL 241523 at *2 n.4, citing Shafer v. Cronk, 532 A.2d 1131-33 (N.J.Super.Ct. 1987).
The undisputed facts in the summary judgment record demonstrate that Kelleher and the plaintiffs agreed to a high-low agreement with a high of $1.3 million and a low of $ 1.3 million, with the understanding that the plaintiffs would not seek Kelleher’s personal assets. This agreement constitutes a bargained-for exchange that settles the issue of Kelleher’s liability to the plaintiffs. While this settlement was not detailed to the same extent as the plaintiffs’ settlements with Commerce, it has the same effect in terms of ending the dispute with Kelleher.
Although the plaintiffs assert that they did not intend to release Kelleher from the litigation, such a conclusion does not mesh with an agreement not to seek his personal assets. The plaintiffs want to have their cake and eat it too; on one hand agreeing not to pursue Kelleher’s personal assets if he signed off on the disbursal of the $1.3 million from insurance and on the other hand arguing that despite such an agreement, Kelleher is still somehow involved in the litigation. The plaintiffs cannot have it both ways. Kelleher exchanged his ability to release the insurance monies for the plaintiffs’ agreement not to pursue his personal assets. This agreement ends their dispute as there is simply no role for Kelleher in this litigation in light of the high-low agreement.[4] Keeping Kelleher in the litigation at this point would have a nonsensical result as the plaintiffs would have no incentive to aggressively pursue their case against him as they could not pursue his personal assets and they have already agreed on a $1.3 million settlement.
For the foregoing reasons, the Defendants’ motion is ALLOWED as to Kelleher and the plaintiffs’ claims against him are dismissed.
II. Vicarious Liability/ Respondeat Superior Claims
The GWB defendants argue that because the high-low agreement functioned as a settlement and release dismissing the plaintiffs’ claims against Kelleher, the vicarious liability claims asserted against them must also be dismissed. The plaintiffs argue that Kelleher was not released and that even if the court determines he was, they can still pursue the GWB defendants as his principal.
The theory of respondeat superior holds employers vicariously liable for the torts of employees committed in the scope of their employment. Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 404 (1990). The liability of the principal in these cases is merely derivative of the liability of the agent. Elias v. Unisys Corp., 410 Mass. 479, 481 (1991). A general release given to an agent in these circumstances will *498 also release the claims against the principal. Id. at 482. See also Kelly v. Avon Tape, Inc., 417 Mass. 587, 589-90 (1994); Bailey v. Bourne, 38 Mass.App.Ct. 70, 71-72 (1995). But see Atlas Tack Corp. v. DiMasi, 37 Mass.App.Ct. 66, 71 (1994) (a release will not discharge a vicariously liable party if the release contains an express reservation of rights against that party).
The discussion above established that the high-low agreement between Kelleher and the plaintiffs functions as a settlement and release of Kelleher. The plaintiffs point to nothing in the record that would function as an express reservation of rights against the GWB defendants. The GWB defendants are not mentioned in the releases dealing with the Commerce payments, nor are they mentioned in the countersigned letter detailing the high-low agreement between Kelleher and the plaintiffs. Without express language anywhere reserving their rights against the GWB defendants, the plaintiffs cannot argue that their claims based on vicarious liability survive.
For the foregoing reasons, the defendants’ motion is ALLOWED and the plaintiffs’ claims against the GWB defendants premised on the vicarious liability of Kelleher are dismissed.
III. Independent Grounds for Negligence
The plaintiffs argue that even if the claims of vicarious liability against the GWB defendants are dismissed, there are still independent grounds to base a claim of negligence due to the GWB defendants’ failure to exercise reasonable care in hiring and retaining Kelleher as an independent contractor. The GWB defendants assert that Massachusetts does not recognize a cause of action for the tort of negligent hiring and that further they are not liable for his actions as an independent contractor because they did not retain sufficient control over his actions.
Section 411 of the Restatement (Second) of Torts states in relevant part that “(aln employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor ... to perform any duty which the employer owes to third persons.’’ Restatement (Second) of Torts §411 (1965). Although there has been little discussion of this cause of action in Massachusetts courts, it has not been rejected. See McNamara v. Mass. Port Auth., 30 Mass.App.Ct. 716, 720 n.5 (1991) (dismissing claim under §411 due to a lack of evidence and recognizing that “there appears to be no case law in Massachusetts interpreting §411”). See also Molinari v. Royal Heights Constr. Co., No. 934424, 1998 WL 1181667 at *1 (Mass.Super.Ct. Sept. 8, 1998) (McHugh, J.) [9 Mass. L. Rptr. 252] (recognizing the tort of negligent selection of a contractor). Importantly, neither McNamara nor Molinari stand for the proposition that §411 is not valid in Massachusetts.
The GWB defendants assert that §411 has not been adopted in Massachusetts, but the two cases cited above demonstrate that although there has been little published discussing §411, a cause of action based on it is a viable tort in the Commonwealth. The plaintiffs argue in support of such a claim that there are numerous facts in the summary judgment record that demonstrate the GWB defendants’ negligence in hiring Kelleher.[5] They point to the GWB defendants’ failure to investigate Kelleher’s driving record, and both Kelleher’s reputation for drinking and the fact that it was common knowledge that he was arrested for operating under the influence during his time as an employee of the GWB defendants at the Franklin depot. In contrast to these contentions, the GWB defendants assert that at no time before the purchase of the distribution rights were they aware of Kelleher’s driving record or his drunk driving arrest. This factual dispute over the extent of the GWB defendants’ knowledge regarding Kelleher’s background precludes entry of summary judgment on the plaintiffs’ claim for negligent hiring/retention of an independent contractor.[6]
For the foregoing reasons, the GWB defendants’ motion is DENIED as to the plaintiffs’ claim of negligence based on a theory of negligent hiring/retention.
ORDER
Based on the foregoing, the defendants’ Motion to Dismiss, or in the Alternative for Summary Judgment is ALLOWED as to all claims against Kelleher and as to claims against the GWB defendants premised on a theory of vicarious responsibility/respondeat superior. The Motion is DENIED as to the plaintiffs’ claim of negligence based on a theory of negligent hiring/retention.

This case is not even like that of a normal high-low agreement where the agreement contemplates the return of a juiy verdict since Kelleher and the plaintiffs agreed on both a high and a low of $1.3 million.

A non-exhaustive list of disputed issues of fact concerning the amount of control the GWB defendants had over Kelleher can be found in Judge Fecteau’s earlier Memorandum of Decision and Order on the Motion of the Defendants, George Weston Bakeries Distribution, Inc., George Weston Bakeries, Inc. and Arnold Foods Company, Inc. for Summary Judgment [22 Mass. L. Rptr. 466].

The GWB defendants make an extensive argument addressing whether they could be held liable as the employer of an independent contractor based on a theory of retained control; however, the theory of negligent hiring/retention set forth in the Restatement (Second) of Torts and argued by the plaintiffs does not mention such a requirement.