J-A28035-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: TYECIA HUTCHINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: VIP SERVICES | : | |
| CORPORATION | : | No. 395 WDA 2020 |
| | : | |
| | : | |
| | : | |
| | : | |

Appeal from the Order Entered February 12, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-20-000414

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                FILED DECEMBER 11, 2020

VIP Services Corporation (Appellant) appeals from the order entered in the Allegheny County Court of Common Pleas, granting the joint petition to transfer structured settlement payment rights filed by payee Tyecia Hutchins (Payee) and transferee TBT Services, LLC (TBT). Appellant was granted permission to intervene in this matter. On appeal, Appellant contends the trial court erred when it scheduled a hearing despite defects in the joint petition, and when it determined the transfer was in Payee's best interests. For the reasons below, we affirm.

The relevant facts and procedural history underlying this appeal are aptly summarized by the trial court as follows:

This litigation commenced with the filing of a Joint Petition to Initiate Case filed by TBT[,] the transferee, and [P]ayee. . . . TBT . . . is a limited liability company organized under and pursuant to the laws of [the] state of Wyoming. [P]ayee . . . is

an adult individual of full age who resides in Pittsburgh, Allegheny County, Pennsylvania. . . .

As a result of personal injuries [received when she was a minor, Payee] was entitled to receive future structured settlement payments. The Annuity owner is Pacific Life and Annuity Company. The Annuity issuer is Pacific Life Insurance Company.

On or about January 2, 2020, [Payee] executed an "Absolute Sale, Transfer and Assignment of Structured Settlement Payment Rights" (the "Agreement"). The Agreement provided for the assignment of future payments to TBT and/or its designated assignee. TBT provided a Disclosure Statement, setting forth, inter alia, the amounts and schedule of payments to be transferred to [Payee].

The Disclosure asserts that [Payee] intends to sell future payments at a discounted present value of $27,131.88. The Disclosure stated the total amount [Payee] would receive for the transaction, as well as . . . the specific payment amounts and timing of the individual structured settlement payments. The Disclosure also included the fee applied for [Payee] to enter into the [Agreement,] effectively, . . . an interest rate of 22.14% per annum[.]

In paragraph twelve (12) of [Payee and TBT's] Joint Petition, they state, "[a]fter due consideration, Payee . . . is satisfied that the transfer is in her best interests for the reasons set forth in the Affidavit attached hereto as Exhibit "C". Again, [Payee] is an adult individual of full age. Further, paragraph fifteen (15) of the . . . Joint Petition maintains that "Payee . . . has executed an Acknowledgment confirming that she has waived independent legal advice, including consideration of any tax ramifications of the transfer.["]

\* \* \*

[O]n January 14, 2020, the [trial court] ordered that a hearing would be held as to the Petitioners' Joint Petition . . . on February 12th, 2020[.]

\* \* \*

. . . An Amended Joint Petition was filed on January 21, 2020 by . . . TBT. In paragraph 10 of the Amended Petition[, Payee averred she intended to sell future payments at a discounted

- 2 -

present value in] the amount of $39,767.02. . . . Paragraph 11 of the Amended Petition goes on to calculate that [Payee] would effectively be paying an interest rate at 24.92[%] per annum.

*   *   *

On February 12, 2020, [Appellant] filed an Emergency Petition to Intervene. At said time, [Appellant] was a non-party to this action. [Appellant] is engaged in the same type of business as TBT; that being, arranging and making lump sum payments to annuity beneficiaries. [Appellant] is headquartered in Delaware.

[Appellant] asserts that on December 13, 2019, [Payee] entered into a Structured Settlement Annuity Sale and Assignment Agreement to [Appellant] (hereinafter "the [Appellant] Agreement"). Pursuant to the [Appellant] Agreement, [Payee] assigned all of her rights, title and interest in one lump sum payment of $8,000.00, due December 24, 2020, to be followed by one lump sum payment in the amount of $15,496.00 on December 24, 2025; in exchange for one lump sum payment by [Appellant] to [Payee] in the amount of $10,615.00. . . . The annual interest rate purported on [Appellant's] transaction is 21.9%.

*   *   *

.  .  . [The petition further asserted that the Appellant's A]greement was in [Payee's] best interest due to a 3% premium over the TBT agreement. [Appellant] further assert[ed] that [Payee] failed to appear for an earlier scheduled appearance date set for court approval [of Appellant's agreement.[1]]

Trial Ct. Op. 7/13/20, at 1-5.

Payee, TBT, and Appellant appeared for a hearing before the trial court on February 12, 2020. The court granted Appellant permission to intervene in the matter "for the limited purpose of offering the deal referenced in [Appellant's] Petition to Intervene to [Payee], and permitting [Payee], in

_____

[1] The hearing for court approval of Appellant's agreement with Payee was rescheduled for February 25, 2020, nearly two weeks after the hearing in the present case. See N.T., 2/12/20, at 4.

- 3 -

[Payee's] sole and absolute discretion, to decide how she wishes to proceed." Intervenor Order, 2/12/20. At the hearing, Payee testified that she previously agreed to sell two future lump sum payments to Appellant, but she had "effectively canceled that contract." N.T., 2/12/20, at 11. She confirmed the terms of her agreement with TBT, including the fact that she was selling $39,767 in future payments in exchange for an "upfront lump sum . . . of $18,307.37[.]" Id. at 13. Payee explained she intended to use the money to pay off $5,000 in credit card bills, some student loans, and a year's rent on a new apartment for her and her child. Id. at 13-14. She also acknowledged the interest rate of the offer proposed by Appellant was better than the rate offered by TBT. Id. at 17.

That same day, the trial court entered a detailed order granting the joint petition filed by TBT and Payee. Appellant filed a timely notice of appeal on March 12, 2020, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement.

Appellant raises the following two issues on appeal:

1. Did the [t]rial [c]ourt err when it approved the TBT Petition because Pa.R.C.P. 229.2 required the [t]rial [c]ourt to deny the TBT Petition?

2. Did the [t]rial [c]ourt err when it approved the TBT Petition, finding it to be in [Payee's] best interests to do so, because the financial terms of the assignment in the TBT Petition were worse than those contemplated by [Payee's] agreement with [Appellant]?

Appellant's Brief at 8-9.[2]

Appellant's claims concern the interplay between the Structured Settlement Protection Act (SSPA), 40 P.S. §§ 4001-4009, and Pennsylvania Rule of Civil Procedure 229.2. The SSPA mandates court approval for the transfer of any future structured settlement payments.[3] See 40 P.S. § 4003(a). In particular, the Act requires the payee establish that "the transfer is in the best interests of the payee or his dependents." 40 P.S. § 4003(a)(3).

Rule 229.2 sets forth the procedure by which a payee and transferee may seek court approval for the transfer of settlement payments under the SSPA. The Rule specifies that a petition seeking to transfer future settlement payments "shall contain" the following:

> (1) a statement setting forth the payment provisions of the structured settlement agreement and the payment rights that the payee seeks to transfer,
>
> (2) separate paragraphs which in bold type set forth
>
> > (i) the net amount payable to the payee after deduction of all commissions, fees, costs, expenses, and charges, and
> >
> > (ii) the following statement setting forth the interest rate:
> >
> > "Based on the net amount that the payee will receive from this transaction ($ ___ ) and the amounts and timing of the structured settlement payments that would be assigned, the

_____

[2] We have reordered Appellant's issues on appeal for ease of disposition.

[3] As the trial court explained in its opinion, the statute was enacted to protect settlement recipients from "factoring companies" that, through "aggressive advertising," offer immediate cash payouts at substantial discounts in exchange for the transfer of future settlement payments. See Trial Ct. Op. at 10 (citation omitted).

payee is, in effect, paying interest at a rate of ＿＿＿ % per year."

(3) four attachments:

(i) a Payee's Affidavit in Support of Petition, in the form prescribed by subdivision (f) as Attachment 1,

(ii) an initial order of court scheduling the hearing, in the form prescribed by subdivision (g),

(iii) a certification by an attorney for the transferee representing to the best of his or her knowledge, information and belief, formed after reasonable inquiry, that the transfer will comply with the requirements of the Act and will not contravene any other applicable federal or state statute or regulation or the order of any court or administrative authority, and

(iv) a final order of court granting the petition, in the form prescribed by subdivision (i).

Pa.R.C.P. 229.2(d)(1)-(3).

The Rule further provides that if the petition meets the criteria set forth above, and includes "factual allegations" which, if proven, would satisfy the requirements of the SSPA, "the court shall promptly enter an order scheduling a hearing date." Pa.R.C.P. 229.2(e)(1). However, if the court denies the petition without first holding a hearing due to a deficiency in the petition or the factual allegations, the Rule permits the payee to file "an amended petition as of course." Pa.R.C.P. 229.2(e)(2).

Appellant first argues the trial court erred in holding a hearing because the joint petition filed by Payee and TBT did not comply with Rule 229.2. Appellant's Brief at 27. Specifically, Appellant contends the petition did not "contain a statement of the payment provisions of the structured settlement agreement and the payment rights [Payee] sought to transfer," but rather,

simply referred to attachments which were "improperly redacted" to remove the requisite financial information. Id. at 29. Appellant insists "[t]his non-compliance with" Rule 229.2 was fatal and "mandated" the court's denial of the petition without a hearing. Id. at 29-30.

"Since this question involves the proper interpretation of the language of our rules of civil procedure, it is one of law, and, thus, our standard of review is de novo." Bruno v. Erie Ins. Co., 106 A.3d 48, 73 (Pa. 2014).

Upon our review, we conclude Appellant's claim is meritless. Although the trial court did not refer to Rule 229.2 in its opinion, it succinctly concluded the joint petition "met all criteria mandated by [40] Pa.C.S. § 4003, including the discounted present value amount, [Payee's] effective interest rate (in 12pt. Bold), as well as a notice of her right to obtain independent counsel, etc." Trial Ct. Op. at 10-11.

Appellant's contention focuses on Subsection (d)(1) of Rule 229.2, which requires the petition contain "a statement setting forth the payment provisions of the structured settlement agreement and the payment rights that the payee seeks to transfer[.]" See Pa.R.C.P. 229.2(d)(1). While this information was included on documents attached to the joint petition, the actual financial information is redacted from the copies of these documents in the certified record.[4] See Amended Joint Petition for Approval of Transfer of

_____

[4] It is unclear whether the trial court received the unredacted documents prior to the hearing. See N.T., 2/12/20, at 6. However, TBT asserts in its brief

Structured Settlement Payment Rights, 1/21/20, at Exhibit A, Absolute Sale, Transfer and Assignment of Structured Settlement Payment Rights, Terms Rider Schedule A; Exhibit B, Disclosure Statements.

Even if the unredacted information was not provided to the trial court before the hearing, we do not agree that Rule 229.2 required the court to deny the petition on its face. Although the Rule mandates the petition include certain financial information — as evident by the use of the phrase "[t]he petition . . . shall contain"[5] — it does not similarly mandate dismissal of the petition when, as here, that information is redacted. Subsection (e)(1) provides that the trial court "shall promptly enter an order scheduling a hearing date" if the petition meets the requirements of the Rule and contains the requisite factual allegations pursuant to Section 4003. Pa.R.C.P. 229.2(e)(1). There is no corresponding language that mandates the dismissal of the petition if it does not meet the pleading requirements of the Rule. See In re Jacobs, 936 A.2d 1156, 1164 (Pa. Super. 2007) (noting that under the then "new" Rule 229.2, "a trial court can deny an SSPA petition without holding a hearing if the petition does not contain factual allegations that support a finding that the transfer is in the petitioner's best interest")

---

that although the petition was "redacted in portions upon request" of Payee, the trial court had a "full understanding of the terms and conditions of the proposed transfers . . . prior to and during the hearing on February 12, 2020." TBT's Brief at 41-42 (unpaginated) (emphasis added).

[5] Pa.R.C.P. 229.2(d) (emphasis added).

(emphasis added). Rather, Subsection (e)(2) permits the payee to "file an amended petition as of course" if the court denies the petition without a hearing because of a pleading deficiency. Pa.R.C.P. 229.2(e)(2). Thus, we disagree with Appellant's underlying premise that the trial court was required to dismiss the joint petition if it concluded the pleading was insufficient. Indeed, if it had done so, Payee could have simply filed an amended petition under Subsection (e)(2). Accordingly, this claim fails.[6]

Next, Appellant argues the trial court erred when it approved the joint petition since the transfer was not in Payee's best interest. Appellant's Brief at 21. Appellant insists that because Payee's reasons for transferring her settlement payments were "purely financial," the trial court should have found that its proposed transfer, which included more favorable terms than the TBT offer, was in Payee's best interests. Id. at 21-22. Indeed, Appellant maintains the trial court neglected its guardianship role when it ignored "uncontroverted evidence" that the settlement offer from Appellant had "better financial terms" than the offer in the joint petition. Id. at 23.

Our analysis of the requirements of the SSPA involves statutory interpretation; thus, "our standard of review is de novo and our scope of review is plenary." In re Jacobs, 936 A.2d 1156, 1163 (Pa. Super. 2007).

_____

[6] We note, too, that Appellant did not raise this purported pleading deficiency before the trial court at the February 12th hearing. Thus, we could find this issue waived. See Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Our review of the record, and in particular the transcript from the petition hearing, reveals no error on the part of the trial court. At the hearing, Payee acknowledged that she had entered into a contract with Appellant in late November or early December of 2019, to transfer two future settlement payments. N.T., 2/12/20, at 11, 17. However, she later decided to "cancel[ ]" that contract and enter into an agreement with TBT. Id. at 11. She explained:

> I was being threatened that [Appellant] would intervene today. They've harassed me and said they were going to send notaries to my house, and if I didn't deny the court hearing with [TBT], that they were going to send people to my house.

Id. at 11-12. Payee confirmed the financial terms of her agreement with TBT, and conceded that the contract with Appellant included a lower interest rate. Id. at 12-13, 15-17. Furthermore, Payee testified she intended to use the money to "pay off some credit card bills and student loans and also improve [her] living situation." Id. at 13.

Based upon this record, the court found the agreement with TBT was in Payee's best interests. The court emphasized that "[t]he formation of a valid contract requires the mutual assent of the contracting parties," and assent cannot be obtained by means of duress. Trial Ct. Op. at 11. Further, the court disputed Appellant's argument that a person is "mandated to accept the highest offer." Id. (citation omitted).

We agree. Here, it is evident that Payee, an adult, was fully aware of the terms of both offers, and chose to proceed with TBT. Appellant appears

to argue that Payee's preferred choice is irrelevant, and that the trial court "fail[ed] to fulfill its guardianship role" when it approved a petition with less favorable financial terms. Appellant's Brief at 23. In doing so, Appellant relies upon this Court's decision in Power v. Tomarchio, 701 A.2d 1371 (Pa. Super. 1997), a case that we conclude is distinguishable.

In Power, the minor plaintiff suffered injuries after being bitten by defendants' dogs. Power, 701 A.2d at 1373. The defendants refused to accept the court's pretrial settlement recommendation of $15,000, and the parties proceeded to binding arbitration. Id. Prior to the arbitration hearing, the parties entered into a high/low agreement whereby the minor plaintiff was guaranteed a recovery no less than $7,500, and no more than $20,000. Id. Despite the fact that any settlement agreement involving a minor party must be approved by the court pursuant to Pa.R.C.P. 2039,[7] the parties did not inform either the trial court or arbitration panel of the high/low agreement. Id. at 1373-74. Subsequently, the arbitrators awarded the minor plaintiff $35,000. Id. at 1373. Neither party appealed. Thereafter, the minor plaintiff's parents filed a petition in the trial court for permission to accept a settlement in the amount of $20,000, the high end of the pre-arbitration agreement. Id. The court, however, denied the petition, and refused to

_____

[7] Rule 2039 provides in relevant part, "No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa.R.C.P. 2039(a).

- 11 -

accept any settlement that was less than the arbitration award. Id. It entered judgment on the arbitration award, and denied the defendants' motion to set aside the award nunc pro tunc. Id.

On appeal, the defendants argued, inter alia, that the court erred in refusing to enforce the parties' high/low settlement agreement. Power, 701 A.2d at 1373. The defendants insisted that Rule 2039 was intended to protect minors from exploitive, inept or dishonest counsel, not situations where counsel was attempting to protect the child's potential recovery. Id. at 1374. This Court, however, concluded Rule 2039 mandates trial courts "supervise all aspects of settlements in which a minor is a party in interest, and in considering whether to approve a settlement, [trial courts are] charged with protecting the best interests of the minor." Id. (citation omitted). Thus, the panel held that, when faced with the option of approving the $35,000 arbitration award, or the $20,000 high/low settlement, the trial court "was compelled to deny [the] petition for a minor's compromise for the lesser amount." Id. at 1375. The Power Court summarized:

> In closing, while we may accept [the defendants'] claim that all parties were at all times acting in good faith, and that both parties' counsel perceived that they were acting in their client's best interest when they entered into the high/low agreement, we must emphasize that Rule 2039 was specifically designed to remove from the litigants and their counsel the authority to subjectively determine what is right for the minor; the Rule makes the Court the final arbiter of what is in the minor's best interest. It is imperative that all counsel appreciate the role that the court must play in evaluating any agreement which affects a minor's recovery.

Id. at 1375-76 (citation and footnote omitted).

The facts in *Power* are distinguishable from those in the case sub judice. First, *Power* concerned the protection of the interests of a minor, who is incompetent to "choose" between competing settlement offers. Second, although the parties in *Power* were acting in the minor's best interest when they negotiated the high/low settlement agreement, they did not seek court approval of the agreement, as required by Rule 2039. Thus, the court properly determined the arbitration award, which had become final after the expiration of the appeal period, was "clearly in the minor's best interest." *Power*, 701 A.2d at 1375.

> With regard to the SSPA, this Court has explained:
>
> [The] active oversight on the part of the trial court . . . advances the SSPA's primary objective of safeguarding recipients of structured settlements from the transferees that seek to persuade them to sell their future payments at sharp discount rates.

*Jacobs*, 936 A.2d at 1165. Here, the trial court took an active part in the hearing to ensure Payee was fully aware she was "trading" substantial future payments for a lesser immediate payment. See N.T., 2/12/20, at 15. Moreover, while Appellant's offer may have had a slightly more favorable interest rate, Payee clearly explained that she felt "harassed" by Appellant and did not want to do business with them. Id. at 11-12. In its opinion, the trial court stated that, after the hearing, it received an affidavit from Payee in which she stated she was still being harassed by Appellant. See Trial Ct. Op. at 5-6. Thus, the court concluded that Payee's "subsequent affidavit [left the court]

with zero regrets and no reservations as to this issue." Id. at 12. We find no basis to disagree.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/11/2020